MATTHEW KLAAS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 77040. Filed May 5, 1961.

*Ralph L. Concannon, Esq.*, for the petitioner.
*Clarence M. Dunnaville, Jr., Esq.*, for the respondent.

#### OPINION.

TRAIN, *Judge:* Respondent determined a deficiency in petitioner's income tax for the calendar year 1956 in the amount of $2,975.36.

The sole issue for decision is whether petitioner and his wife are entitled to file a joint income tax return for the year 1956.

All of the facts are stipulated and are hereby found as stipulated.

Petitioner, Matthew Klaas (hereinafter called Matthew), is an individual residing in Zurich, Switzerland. Petitioner resides with his wife, Ida Klaas (hereinafter called Ida), to whom he has been married for many years. Prior to January 1, 1956, the taxable year of the petitioner and his wife was the calendar year. The petitioner and his wife filed joint income tax returns on a calendar year basis for 1955 and for prior years. Petitioner and Ida kept their books and filed their Federal income tax returns on the cash receipts and disbursements basis.

Matthew and Ida came to the United States a number of years prior to January 1, 1956, and established residence in this country.

Prior to and during the entire period from January 1, 1956, to October 24, 1956, Matthew and Ida were resident aliens of the United States.

Matthew was and is an insurance company executive. Prior to and during the entire period from January 1, 1956, to October 24, 1956, Matthew was employed by Swiss Reinsurance Company of Zurich, Switzerland, and by an affiliate, Swiss Re Corporation, in the New York City offices of these corporations.

Matthew and Ida arranged to depart from the United States on October 24, 1956, and to return to Switzerland to resume their residency there. The reason for the departure was that Matthew had been transferred to the Zurich, Switzerland, office of the Swiss Reinsurance Company.

On October 18 and 19, 1956, Matthew and Ida presented themselves at the office of the district director of internal revenue, Upper Manhattan District, New York City, New York, to obtain a certificate of compliance as is required by the provisions of section 6851(d) of the Internal Revenue Code of 1954 in order to depart from the United States. At that time Matthew and Ida filed a joint income tax return on Treasury Department Form 1040. The return was prepared and filed on a cash receipts and disbursements basis for the period from January 1, 1956, to the date of their departure, October 24, 1956, inclusive. This form stated that it was for the taxable year, beginning January 1, 1956, to October 31, 1956. The return showed a tax liability of $7,144.20, tax payments of $9,050, and an overpayment of tax of $1,905.80. There was an error of $99.98 in the tax computation on the return and actually the overpayment claimed should have been $1,805.82. Petitioner and his wife also filed, on Treasury Department Form 1040C, a joint departing alien's income tax return for the period from January 1, 1956, to the date of their departure, October 24, 1956, inclusive. The return included exactly the same items of income and deductions as were set forth on their joint income tax return on Form 1040 referred to hereinbefore. The examining agent advised Matthew and Ida that he would not compute their income tax liability on Form 1040C on a joint return basis, since they would not be resident aliens for the entire calendar year ending December 31, 1956. Instead, the revenue agent computed the tax liability on the basis of the tax rates found in Internal Revenue Code section 1(a) and applicable to individuals other than a head of a household. The computation disclosed a tax liability of $10,354.15. Tax payments of $9,050 had been made leaving a balance due of $1,304.14 (an error of 1 cent was made). The Commissioner of Internal Revenue gave notice to Matthew and Ida that their taxable years were terminated as of October 24, 1956, pursuant to the provisions of section 6851(a) of the Internal Revenue Code of 1954.

The respondent then demanded from Matthew and Ida the sum of $1,304.14. On October 19, 1956, Matthew paid the $1,304.14 demanded by the respondent. Upon receipt of such payment, respondent issued a certificate of compliance to Matthew and Ida. Petitioner and Ida departed from the United States on October 24, 1956. On that date, petitioner and his wife both terminated their United States residence and resumed their Swiss residency.

On or about December 28, 1956, Matthew and Ida filed, on Treasury Department Form 843, a jointly executed claim for refund of Federal income taxes overpaid with the district director of internal revenue, Upper Manhattan District, New York, New York. The claim was for the period January 1, 1956, to October 24, 1956, and in the amount of $3,109.97 (a 1 cent error was made and the claimed overpayment should have been for $3,109.96). The $3,109.96 represents the difference between the district director's computation of income tax on an individual basis and the computation on a joint basis. The district director's computation does not include a foreign tax credit in the amount of $134.60.

The tax refund claim of Matthew and Ida was returned to them by the district director, Upper Manhattan District, New York, on or about January 15, 1957, with a letter stating that "a final 1040 (enclosed) should be properly completed and returned to this office for further action." On or about April 11, 1957, Matthew and Ida filed another jointly executed claim for refund of Federal income taxes overpaid on Treasury Department Form 843. This claim was for the period from January 1, 1956, to October 24, 1956, inclusive, and was for the amount of $3,109.96 (the amount claimed on the earlier Form 843 less a 1 cent error). The refund claimed was accompanied by a joint Federal income tax return executed by the petitioner and his wife for the period from January 1, 1956, to October 24, 1956, inclusive. On May 31, 1957, petitioner received a check from respondent in the amount of $3,109.96.

On July 12, 1957, petitioner received a check from the Commissioner of Internal Revenue in the amount of $1,819.89, representing the corrected overpayment claimed ($1,805.82) together with interest of $11.37 thereon. This amount of $1,819.89 has since been repaid by the petitioner (since the tax portion thereof was included in the refund received aforementioned in the preceding paragraph) and there is no dispute about such amount in this proceeding.

Petitioner made a short business trip to the United States in October–November 1957. Prior to his departure scheduled on November 6, 1957, he presented himself to the district director's office to obtain a certificate of compliance. In response to an inquiry, Matthew told the examining revenue official that he had received the payment hereinbefore referred to from the Commissioner. Upon

hearing this, the revenue official insisted that petitioner repay the amount refunded or post a bond or furnish security for this amount before petitioner could depart from the United States. Matthew was granted the certificate of compliance after Messrs. Lord, Day & Lord, 25 Broadway, New York, New York, attorneys, had deposited the sum of $3,500 in a special account with the district director of internal revenue, Upper Manhattan Division, Alien Income Tax Section, to guarantee any income tax liability which might be due from petitioner on audit of his tax liability.

In his notice of deficiency to the petitioner, respondent determined that "you were not entitled to file a joint return for the taxable year 1956 since the taxable year as used in section 6013(a)(1) of the Internal Revenue Code refers to a full calendar or fiscal year and does not exclude a nonresidence period from the taxpayers' taxable year."

The sole issue to be determined is whether petitioner and his wife are entitled to file a joint return for the year 1956. It is petitioner's contention that he is entitled to file a joint return with his wife under the provisions of section 6013 of the 1954 Code. Petitioner contends that he and Ida were resident aliens during their "taxable year," which, he contends, began January 1, 1956, and ended October 24, 1956, when respondent terminated his normal calendar year under the provisions of section 6851(a)(1). To support his contention, petitioner relies on sections 441(a) and (b)(3) and 443(a)(3), section 1.441-1(b), Income Tax Regs., the definition of "taxable year" as defined in section 7701(a)(23), and the legislative history of section 6013(a)(1).

Respondent contends that petitioner's "taxable year" was the calendar year which ended December 31, 1956. He contends that the closing of the taxable period under section 6851(a)(1) does not close the taxable year. Section 6013(a)(1) provides that no joint return shall be made if either the husband or wife at any time during the taxable year is a nonresident alien. Respondent contends that since petitioner's "taxable year" was a calendar year, he is not entitled to file a joint return because he and his wife were nonresident aliens for part of that year. He points out that section 1.6851-2(b)(4), Income Tax Regs., expressly provides that unless a departing alien and his spouse may reasonably be expected to be eligible to file a joint return at the normal close of their taxable periods for which the return is made and, if the taxable period is terminated, the taxable periods of both spouses are terminated and at the same time, a departing alien may not file a joint return on Form 1040C. In further support of his position, respondent relies on section 1.6851-1(c), Income Tax Regs., which provides that, notwithstanding any action by a district director under section 6851, a taxpayer shall file a return in accordance with section 6012 and the regulations thereunder for his

current taxable year showing all items of gross income, deductions, and credits for such taxable year. According to the regulation, the term "current taxable year" means the taxpayer's usual annual accounting period determined without regard to any action under section 6851 and the regulation. Any tax paid as a result of a termination under section 6851 and the regulation is to be applied against the tax due for the current taxable year.

We agree with the respondent. The United States has no jurisdiction over an alien outside its territory; therefore, the Congress has recognized the importance of collecting any taxes owing by an alien prior to his departure from the United States. To this end, under section 6851(a)(1), Congress has authorized the respondent to terminate a taxpayer's taxable period and forthwith demand payment of the tax instead of waiting until the end of the taxpayer's normal taxable year and following the usual assessment and collection procedure. Section 6851(b) provides that notwithstanding the termination of the taxable period of the taxpayer by the Secretary or his delegate, the Secretary or his delegate may reopen such taxable period each time the taxpayer is found by the Secretary or his delegate to have received income, within the current taxable year, subsequent to a termination of the period under subsection (a). A taxable period so terminated by the Secretary or his delegate may be reopened by the taxpayer. Section 6851(b) is a provision added by the 1954 Code. The committee reports give the following explanation for its addition:

This section, except subsection (b), makes no material change from existing law. Subsection (b) is a new provision which permits the taxable year, once closed by the Secretary, to be reopened. Subsection (b) will apply, for example, in the case of an alien who departs from and returns to the United States within the 12-month period which would otherwise be his taxable year. Under existing law, such a taxpayer would have more than 1 taxable year in the same 12-month period. This section provides that the taxable year shall be reopened if the taxpayer files a true and accurate return of his items of gross income, deductions, and credits, together with such other information as may be required by regulations. [H. Rept. No. 1337, 83d Cong., 2d Sess., p. A421 (1954).]

As noted from the committee report, it was the intent of Congress that a taxpayer have only one taxable year within a 12-month period. The termination of the taxable period under section 6851 temporarily closes a taxable period, but the taxpayer's taxable year is still his normal calendar or fiscal year. Under the provisions of sections 6013(a)(1) and 6851 of the statute and sections 1.6851-1(b)(1) and (2),[1] 1.6851-1(c), *supra*, and 1.6851-2(b)(4), *supra*, Income Tax

---

[1] Sec. 1.6851-1 TERMINATION OF TAXABLE PERIOD BY DISTRICT DIRECTOR. * * *

    *        *        *        *        *        *        *

  (b) *Reopening of taxable period.*—(1) *Income received after termination.*—If a taxpayer whose taxable period has been terminated under section 6851 and paragraph (a) of this section receives other income subsequent to such termination within his current tax-

Regs., petitioner is not entitled to file a joint return. It is well settled that respondent's regulations must be regarded as valid, unless unreasonable or inconsistent with the statute. They constitute a contemporaneous construction of the statute by those charged with its administration and will not be disturbed or overruled except for weighty reasons. *Commissioner* v. *South Texas Co.*, 333 U.S. 496, 501 (1948); *Fawcus Machine Co.* v. *United States*, 282 U.S. 375, 378 (1931); *Brewster* v. *Gage*, 280 U.S. 327 (1930). By such a test, the regulation is clearly valid.

We hold that petitioner was a nonresident alien for a portion of his taxable year and, therefore, is not entitled to file a joint return with his wife under the provisions of section 6013.

*Decision will be entered for the respondent.*

---

able year, the district director may reopen the period so terminated and may, in accordance with section 6851 and paragraph (a) of this section, again terminate the taxable period of such taxpayer. In such case, tax liability shall be computed for the period beginning with the first day of the current taxable year of the taxpayer and ending at the time of the later termination.

(2) *Return filed after termination.*—When a taxpayer whose taxable period has been terminated under section 6851 and paragraph (a) of this section files the return required by paragraph (c) of this section, the taxable period so terminated shall be reopened.