Clifford IRVING et al., Plaintiffs,

v.

Elliott H. GRAY, District Director of Internal Revenue, District of Manhattan, and Clarence I. Fox, Director of International Operations of the Internal Revenue Service, Defendants.

No. 72 Civ. 2110.

United States District Court, S. D. New York.

June 15, 1972.

Nickerson, Kramer, Lowenstein, Nessen & Kamin, New York City, for plaintiffs; Sherwin Kamin, Maurice N. Nessen, Paul H. Asofsky, Harold P. Weinberger, New York City, of counsel.

Whitney North Seymour, Jr., U. S. Atty. for Southern District of New York, for defendants; Michael I. Saltzman, Asst. U. S. Atty., of counsel.

## OPINION

FRANKEL, District Judge.

Plaintiff Clifford Irving, a United States citizen, resides in Ibiza, Spain, with his wife, Edith, also a plaintiff, who is a citizen of Switzerland. Plaintiff Richard Suskind is, like Irving, a United States citizen resident in Ibiza. The genesis of their troubles, extending far beyond this proceeding, is in their roles in what they describe as the "Hughes hoax."

Briefly described, mostly in plaintiffs' terms, the hoax was a plan concocted by the two male plaintiffs to write "a spurious 'authorized' version of the life of the billionaire recluse, Howard Hughes * * *." For this proposed contribution, Irving obtained a contract with the publishing house of McGraw-Hill, Inc. Pursuant to that contract, Irving received from McGraw-Hill in the year 1971 a total of $765,000—$100,000 as advance royalties, $15,000 for expenses and $650,000 in checks made out to Howard Hughes for supposedly participating in and authorizing the work. Of the $650,000, $466,250 was deposited following collection of the checks in an account in the Swiss Banking Corporation by plaintiff Edith Irving, "using [in the slightly uncertain account of her counsel requesting a revenue ruling] either assumed names or false identification papers." Other portions of that money, which never found its way to Hughes, were placed in various bank and brokerage accounts, including at least one in the name of Edith Irving.

When events deviated somewhat from their alternatively described "bold plan," plaintiffs were indicted on federal

charges of mail fraud and conspiracy to commit mail fraud. Having pled guilty to the conspiracy count, they are scheduled to be sentenced in this court tomorrow. Having also pled guilty to state grand larceny and conspiracy charges, they are to receive their state sentences on the same day.

On February 4, 1972, defendant District Director sent to each of the plaintiffs a letter reporting exercise of the power under 26 U.S.C. § 6851(a) to "terminate" a taxable year and demand immediate payment of a tax upon a finding "that a taxpayer designs quickly to depart from the United States or to remove his property therefrom, or to conceal himself or his property therein, or to do any other act tending to prejudice or to render wholly or partly ineffectual proceedings to collect the income tax for the current or the preceding taxable year \* \* \*." The letters differ in the amounts they assess but are otherwise substantially identical. The one to Edith Irving, whose claim is almost the exclusive subject of plaintiffs' contentions, reads this way:

"Dear Madam:

"You are hereby notified that I find you design quickly to depart from the United States and to conceal or remove your property from the United States, or to do some other act, thereby tending to prejudice or render ineffectual collection of income tax for the period of January 1 to December 31, 1971.

"Accordingly, under authority of section 6851 of the Internal Revenue Code and regulations, I declare the taxable period of January to December 31, 1971, immediately terminated and the income tax for such period immediately due and payable. Any such tax in the following amount that is unpaid will be immediately assessed against you.

| Taxable Period | Tax |
|---|---|
| January 1 to December 31, 1971 | $243,118.00 |

"Demand for immediate payment of the full amount of this tax is hereby made.

"Under section 443 of the Internal Revenue Code you are required to file a return for your terminated taxable period. Such termination and filing does not relieve you of the responsibility for filing a return for your usual annual accounting period under section 6012 of the Code. Any amount collected as a result of termination of the period will be applied against the above assessment and credited against the tax finally determined to be due on your annual return.

Very truly yours,

sgd Elliott H. Gray
District Director"

Despite the direction in the last paragraph of the letter to file a return, none of the plaintiffs has yet filed one.

On the date of the letters under § 6851, the IRS also served notices of levy upon a brokerage company, Merrill, Lynch, Pierce, Fenner & Smith, Inc., in which the plaintiffs had accounts. Toward the end of April Merrill Lynch sent to the District Director checks for $86,458.18 and $4,864.74, representing, respectively, balances in the accounts of Edith Irving and Richard Suskind. The checks appear now to have been cashed, though they had not been when the instant action was begun.

Apart from the fact that the Director's finding under 26 U.S.C. § 6851(a) is "for all purposes presumptive evidence of jeopardy," there has been no suggestion by the plaintiffs that their history of hoax, assumed names, and criminal convictions left insufficient basis for such action to protect the revenue. But they claim in this case that the IRS was guilty of technical slips that are more than solecisms; that their substantial rights have been invaded through such errors; and that the assessments and related actions against them should now

be nullified. Specifically, plaintiffs allege that:

(1) § 6851 "could not be invoked to terminate a taxable year which had already ended," so that the notices of termination were invalid at their inception.

(2) The assessments in question are "jeopardy assessments," which could only have been effected under 26 U.S.C. § 6861, subsection (b) of which requires the mailing of notices of deficiency within 60 days. No such notices having been given, the assessments have been vitiated even if they were valid to begin with.

(3) Edith Irving's role in the hoax was "a subsidiary one," so that "[u]nder the most liberal view of the facts and law, defendants cannot possibly succeed in upholding assessments and levies against her property."

Pressing these contentions as grounds for extraordinary relief, plaintiffs moved upon the filing of their complaint for a preliminary injunction. Their motion, now before the court, seeks to restrain (1) the cashing of the two checks (a matter, now moot, which has been allowed to drop out of the controversy) and (2) the serving of "any further notice of levy, or any demand for collection pursuant to any notice of levy already served, which is based on the invalid jeopardy assessment * * *." Plaintiffs have also moved for summary judgment. Defendants have moved to dismiss the complaint.

As a barrier to this suit and grounds for its dismissal, defendants invoke 26 U.S.C. § 7421(a), which says:

"Except as provided in sections 6212 (a) and (c), 6213(a), and 7426(a) and (b) (1), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed."

Plaintiffs counter that their action is within the express exceptions under § 6212(a) and (c) and § 6213(a). This frames the somewhat technical issues of law canvassed in the papers and on oral argument.

█ Before reaching those issues, however, it is useful to deal with plaintiffs' basic and pervasive premise that Edith Irving is clearly not liable for the tax defendants have assessed. Plaintiffs' argument concerning Mrs. Irving is, in the repeated and earnest form of counsel's contentions, that she was a mere "courier," having only a "subsidiary role," so that a claim of large proportions against her, based upon the $750,-000 or so extracted from McGraw-Hill, cannot possibly be sustained at the end of the tax controversy. The trouble with this contention is that it is unsupported —and in some measure refuted—by the materials before the court. None of the plaintiffs before us tenders a word of direct evidence on the subject. There may be good reason for that, but the gap is not suitably filled by the assertions of counsel. Furthermore, the Government has presented sworn grand jury testimony of Clifford Irving to the effect that $85,000 of the money gotten from McGraw-Hill went into Edith's brokerage account. The Government, whatever may ultimately be shown, is not required to find her a mere "courier" at this rate. As things stand, the case for her liability as the recipient of embezzled income is at least substantial. James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961). And this suit to restrain collection of federal revenues must be judged in light of what the officers of the Internal Revenue Service know, or are fairly entitled to claim, at the time when they act or, at the latest, when the extraordinary relief of blocking them is being sought. Enochs v. Williams Packing Co., 370 U.S. 1, 7–8, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962). Thus viewed, this is no case for injunctive relief unless (1) either or both of the exceptions plaintiffs

invoke may serve to get them past § 7421 (a) and (2) the usual grounds for an injunction are shown. The court, influenced along the way by the apparently unmeritorious character of Mrs. Irving's substantive tax contentions, concludes that plaintiffs can establish neither of these two, jointly essential, requisites.[1]

■ 1. Plaintiffs argue that the notices under 26 U.S.C. § 6851 were void *ab initio* because the District Director "terminated" a year (1971) which had already been ended by powers greater than his, achieving only a futility. Whatever its philosophical or semantical appeal, the argument is not momentous. The statute empowers the IRS, upon the finding of jeopardy, to make "a demand for immediate payment of the tax for the taxable period so declared terminated and of the tax for the preceding taxable year * * *." Plaintiffs acknowledge, then, that their point about this would never have arisen had the Director "terminated" the year 1972 up to February 4, and then demanded the tax both for that month or so *and* for 1971. (There is no mention of the fact that the period in 1972 would have no practical significance for the tax matters of concern in this case.) They say this makes a large difference because allowing the Director to skip this formal step would permit him to run wildly backward through closed years, trampling upon limitations periods and other protections for taxpayers. It seems sufficient for now to recall the wisdom of Holmes and others about imaginable horrors. For the present case, the fair, orderly, notably practicable and literally defensible reading by defendants of § 6851 affords no basis for the injunction plaintiffs seek.

2. Defendants claim that the "jeopardy assessments" in this case, stemming from the notices under § 6851, were based upon the general authority of the "Secretary or his delegate" under 26 U. S.C. § 6201 "to make * * * assessments of all taxes (including interest, additional amounts, additions to the tax, and assessable penalties) * * *." Plaintiffs counter that the assessment under § 6851 created a "deficiency" under § 6211(a); that the jeopardy assessment could be made, and must be deemed to have been made, only under § 6861; that subsection (b) of § 6861 requires a notice of deficiency to be mailed "within 60 days after the making of the [jeopardy] assessment"; that no such notice has been mailed; and that, as a result, if the jeopardy assessment was valid when made, it has been nullified by this omission. The point is important, plaintiffs say, because without a notice of deficiency, they have no "ticket" to the Tax Court and thus no way of obtaining review on the merits of their alleged tax liabilities short of first paying the Government's claims in full so that they may sue in the district court under the restrictions of Flora v. United States, 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958).[2] For this line of reasoning, plaintiffs rely heavily upon the thorough and learned opinion in Schreck v. United States, 301 F.Supp. 1265 (D.Md.1969), among other precedents. Despite the weight of such authorities, and for an array of reasons both technical and equitable, this court has reached a conclusion contrary to plaintiffs'.

1. It seems pertinent that the three plaintiffs concentrate their arguments on the facts affecting only Mrs. Irving. Plaintiff Suskind, though a small check representing his brokerage account was taken, and though a formal demand is made for him, is not mentioned in the argumentation. It is perhaps a sufficient explanation that his tax liability plainly exceeds the amount of the check. Comparable observations would apply to Clifford Irving, whose individual case for relief is not particularized at all.

2. Defendants argue that plaintiffs misread *Flora v. United States*, and that review of the levies in the district court would be available if plaintiffs filed returns claiming a refund of the excess (if any) of the amount seized over the amounts reported as tax due. Plaintiffs insist, in any event, that their route to the Tax Court may not be barred contrary to law. Dealing with that contention, the court finds it unnecessary to resolve the difference about *Flora*.

██ ██ To begin with, while the matter is far from clear, and while it is not crucial ultimately for decision, this court would agree with an unreported Seventh Circuit decision (and respectfully disagree with *Schreck v. United States, supra*)

> "that the deficiency notice requirement cannot be read into § 6851 because the assessment made under that section is not a deficiency as defined in § 6211. That section defines a deficiency as the amount by which the 'tax imposed' exceeds the amount shown on the tax return. The assessment in this case was not an imposed tax, but merely an amount which the I.R.S. believed justified the termination of the taxable year. Since no return had been filed at the date of the assessment, no deficiency was determinable." [3]

While the words and pattern of the pertinent statutes leave room for disagreement with, or qualification of, the quoted holding, it seems on balance to be the fair, sensible and sound view to govern the present case. The plaintiffs were directed—they were certainly permitted—to file 1971 returns at any time starting February 4, 1972. The opportunity has thus been present during a period of four months for them to declare, under penalties of perjury, the facts and the ultimate conclusion they assert as to their tax liability. If any or all of them agree with the amounts swiftly computed, for jeopardy purposes, by the IRS, there will be no "deficiency" in any sense and nothing ever to fight about. If they claim a lesser liability, then—but only then—there will be an occasion to talk of "deficiencies" in a meaningful sense. If that situation should come to pass, there may be an interest in having a speedy notice of deficiency so that plaintiffs—or one or two of them—may go to the Tax Court. If at that stage, the IRS should delay in giving notice, there might be reason for the court to consider relief in the nature of that given in *Schreck v. United States*. But there is no such reason now.

It bears emphasis that, as the District Judge said in *Schreck*, the position plaintiffs press on the basis of 26 U.S.C. § 6861(b) has for its substantial goal only the right "to litigate, without prepayment, the validity of the assessment and the levy * * *." 301 F.Supp. at 1278. If plaintiffs had, right now, "tickets" called "notices of deficiency," they would be entitled only to begin the Tax Court journey, by no means assured of breakneck speed. They would not, on their own theory, have the right to block the assessment or collection efforts except upon the posting of bonds, 26 U.S.C. § 6863(a); 301 F.Supp. at 1279, measures which nobody has suggested as actually desired in this case.

In sum, strictly as a matter of tax-collection procedures, plaintiffs present a thin case for injunctive relief. They have shown neither the diligence nor the substantive equities they could accomplish by filing tax returns to assert concretely the ultimate rights or limited liabilities they purportedly mean to claim. Even if their theories are more technically substantial than this court finds them —even, that is, if there may be in a relevant sense a "deficiency" without a tax return—not enough is shown to warrant judicial blocking of the revenue collectors at the instance of these plaintiffs.

3. Some further emphasis on the merits is appropriate. If plaintiffs, or any of them, were under any exceptions to § 7421(a), it would remain their burden to show ultimate likelihood of success on the merits and the threat of irreparable injury as grounds for an injunction. See Enochs v. Williams Packing Co., *supra,* 370 U.S. at 6, 7, 82 S.Ct. 1125. They appear unable to do this. Plaintiffs Suskind and Clifford Irving do not even intimate how they might avoid 1971 tax liability for their shares of the sums embezzled from McGraw-Hill. Mrs. Irving's theory, already mentioned, is not

---

3. Williamson v. United States, No. 17992 (7th Cir. April 8, 1971), typed opinion p. 2.

powerful on what plaintiffs tender as "naked legal issues." All three plead their urgent wishes to repay McGraw-Hill (in order to obtain 1972 deductions) and to pay their lawyers, desires the court would not be disposed to scorn. But it is bearable inequity that those whose "bold plans" are frustrated may suffer potentially costly inconveniences.

Plaintiffs' motions are denied. Defendants' motion to dismiss the complaint is granted.

It is so ordered.