NINO SANZOGNO, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2278–70. Filed June 4, 1973.

*Barry L. Weinstein,* for the petitioner.
*Alan M. Jacobson,* for the respondent.

### OPINION

GOFFE, *Judge:* Respondent determined deficiencies in the Federal income tax of petitioner for the taxable years 1965 and 1966 in the amounts of $1,604.10 and $4,834, respectively. On March 11, 1971, petitioner filed a motion for severance of issues wherein he requested severance of the issue of whether his filing of Form 1040C for the taxable year 1965 when departing from the United States constituted an income tax return so as to bar assessment of additional income tax for that year and so as to prevent disallowance of his deductions under section 874.[1] Such motion was heard on May 3, 1971, and an order was entered on May 20, 1971, granting petitioner's motion to sever. The case was set for trial on December 6, 1971, on the severed issue at which time the issue was submitted upon a stipulation of facts. Accordingly, the sole question before us is whether the Form 1040C filed by petitioner for 1965 constitutes an income tax return under section 6012 so as to commence the period of limitations on assessment and also for the

---

[1] All references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.

purpose of preventing the disallowance of all of petitioner's deductions by reason of section 874.

All of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein and adopted as our findings.

Petitioner, during the calendar year 1965, was a citizen and resident of Italy and did not speak or comprehend the English language. He entered the United States on September 24, 1965, and remained until October 19, 1965, for the purpose of performing as an orchestra conductor for the Lyric Opera of Chicago in Chicago, Ill.

He received as compensation from Lyric Opera $7,896.40, from which $1,800 of Federal income tax was withheld.

On October 15, 1965, petitioner filed with the district director of internal revenue at Manhattan, New York, a U.S. Departing Alien Income Tax Return, Form 1040C, covering the period from January 1, 1965, to October 19, 1965. On such return he reported his compensation from Lyric Opera of $7,896.40 and claimed itemized deductions aggregating $7,725.10, detailed in a "Schedule of Expenses Incurred." The schedule bears a "Disallowances" column which, for reasons we will enumerate later, indicates the return was examined by the district director.

The Lyric Opera advised the district director in Manhattan by letter that upon proper authorization from the district director it would refund to petitioner the withheld tax in excess of the tax due on the return for 1965.

The district director, on October 15, 1965, by reason of the filing of Form 1040C: (1) declared petitioner's taxable year 1965 terminated as of that date; (2) certified that petitioner had satisfied all requirements of the Internal Revenue Code and regulations relating to departing aliens; and (3) advised the Lyric Opera that petitioner's return disclosed no tax liability, that petitioner had claimed no credit for income tax withheld, and that the $1,800 of tax withheld could be refunded directly to petitioner. Lyric Opera refunded the $1,800 in tax which had been withheld.

Petitioner did not file a U.S. Nonresident Alien Income Tax Return, Form 1040B, for the taxable year 1965, and he did not reenter the United States during 1965 after having departed on October 19, 1965.

On November 19, 1969, the Commissioner mailed to petitioner at his address in Italy, a statutory notice of deficiency in which he determined deficiencies in income tax for the taxable years 1965 and 1966. Such statutory notice was mailed more than 3 years after the petitioner filed the Form 1040C. The Commissioner determined for 1965 that petitioner did not file a return, that petitioner received income from his profession as a conductor for Lyric Opera in the amount of

$7,896.40, which he had not reported for U.S. income tax purposes, and allowed petitioner no deductions or exemptions.

The narrow question presented is whether the U.S. Departing Alien Income Tax Return (Form 1040C) constitutes an income tax return for purposes of section 6501 under the facts present here. Petitioner contends that Form 1040C is such a return and, therefore, the period of limitations for assessment of additional income tax for the taxable year 1965 expired before the Commissioner mailed his statutory notice of deficiency. If such is the case, assessment would be barred and a decision would be entered for petitioner for the taxable year 1965. In addition, if the Form 1040C is held to be a return, section 874, which provides for disallowance of all the taxpayer's deductions if a return is not filed, would be inapplicable and petitioner would be entitled to a decision in his favor for the additional reason that his deductions and exemption exceeded his income as reported on the Form 1040C.

Respondent contends that the Form 1040C is not a return as described in section 6501; that only the Form 1040B is such a return; and that because petitioner did not file a Form 1040B the period of limitations had not expired when the Commissioner mailed the statutory notice of deficiency; and, further, that section 874 prohibits allowance of any deductions to petitioner for the taxable year 1965.

The main thrust of petitioner's argument is "substantial compliance." He argues that the Form 1040C which he filed apprised the Internal Revenue Service of all the facts necessary to investigate and determine his income tax for 1965. Unfortunately, petitioner did not prove enough to rely on substantial compliance. We are unable to determine from such a skimpy record whether petitioner substantially complied or not. While we recognize that a hardship may exist in producing petitioner to testify because he is a resident of Italy, we cannot, nevertheless, accept statements of counsel as facts to examine the question of substantial compliance. Petitioner's counsel asserts that petitioner had no other income in 1965 which he would be required to report on the Form 1040B and that petitioner believed he had discharged all of his filing requirements for 1965. There is no evidence in the record to support these assertions. We, therefore, find no grounds for holding that the Form 1040C constituted a return under section 6501 by reason of petitioner's substantial compliance. The cases cited by petitioner in support of his contention of substantial compliance are, therefore, inapplicable.

Any alien, resident or nonresident, who departs from the United States must obtain a certificate, euphemistically termed a "sailing permit," which evidences his compliance with "the obligations imposed upon him by the income tax laws." Sec. 6851(d); sec. 1.6851–2(a)(1), Income Tax Regs.

We shall now embark on a voyage through the various sections of the Income Tax Regulations which are enough to boggle the mind of an English-speaking U.S. citizen.

If the district director deems it necessary, the departing alien must appear before him in connection with obtaining the certificate of compliance. Sec. 1.6851–2(a)(1)(ii), Income Tax Regs. If the district director determines that the departure of an alien jeopardizes collection of any income tax, the district director is authorized to terminate the taxable year of the departing alien and require him to file a Form 1040C. Secs. 1.6851–2(b)(1) and 1.6851–2(b)(3)(iii)(a), Income Tax Regs. His authority to require a return for a period of less than 12 months is derived from section 443(a)(3). See sec. 1.443–1(a)(3), Income Tax Regs. In such case the filing of a Form 1040C is a prerequisite to the issuance of the certificate of compliance by the district director.

This is what occurred in the instant case. The district director terminated the taxable year of petitioner and required petitioner to file Form 1040C for a short period.

The Income Tax Regulations at section 1.6851–2(b)(5), in addition, provide that notwithstanding the fact that a departing alien has filed a Form 1040C for a terminated taxable period he is, nevertheless, required to file a return as required by section 6012 and section 1.6012–1, Income Tax Regs.

Respondent argues, because a Form 1040B is required by the regulations, that only the 1040B and not the 1040C can be a return which commences the period of limitations for assessment. This line of reasoning does not necessarily follow.

Section 6501 prescribes the limitation on assessment to be 3 years after the filing of "the return." We find nothing in section 6501 or section 301.6501, Proced. & Admin. Regs., to indicate that the Form 1040C is not a "return." Moreover the regulations specifically provide that certain returns filed before the due date shall not be considered as having been filed on the due date but they do not describe the Form 1040C in such provisions. Sec. 301.6501(b)–1(b), Proced. & Admin. Regs.

Section 6011 requires a taxpayer to make a return or statement when required by the Secretary or his delegate according to the forms prescribed by the Secretary or his delegate. Section 6012 requires a taxpayer subject to income taxes imposed by subtitle A to make returns of income as may be prescribed by the Secretary or his delegate unless exempted from the requirement by reason of being a nonresident alien subject to tax under the provisions of section 871. Because section 871 is part of subtitle A and because a departing alien, the collection of whose tax the district director has determined to be in

jeopardy, must file a Form 1040C in order to obtain a certificate of compliance, it is apparent that the Form 1040C is a return and when it is filed the period of limitations on assessment commences. Respondent has pointed to nothing in the Internal Revenue Code, the Income Tax Regulations, or case law which convinces us otherwise.

Respondent merely argues that the period of limitations on assessment has not expired because under section 6501(c)(3) an assessment may be made at any time because no return was filed. Here again, respondent assumes that only the Form 1040B can be a return but points to nothing to indicate that the Form 1040C is not a return.

Respondent refers to the Form 1040B as a "final" return and yet cites no authority as to why the Form 1040C is not also a "final" return for a short period. He argues that the Form 1040C only reports income for a portion of the taxable year and that portion of the year is merged into the whole taxable year covered by the Form 1040B. He refers to the Form 1040B as a "declaration of finality" to the taxable year.

Respondent's argument might have some validity if the district director had not terminated petitioner's taxable year.

We recognize that filing a return for a portion of a taxable year does not commence the period of limitations for assessment. *E.D. Gensinger*, 18 T.C. 122 (1952), reversed on other grounds 208 F. 2d 576 (C.A. 9, 1953); *E.F. Stevens, et al.* 14 B. T. A. 360 (1928), affd. 41 F. 2d 1015 (C.A. 8, 1930). However, Form 1040C filed by petitioner herein covered his entire taxable year. The taxable year of petitioner ended on October 19, 1965, the date that the district director terminated it. [2] The Form 1040C was a short-period return but was, nevertheless, a return and is recognized as such in section 443(a)(3) which refers to section 6851. See also sec. 1.443–1(a)(3), Income Tax Regs., which directs the reader's attention to section 6851 and the regulations under that section. Respondent argues that the taxable year is the calendar year 1965 because petitioner could have returned to the United States and earned additional income before December 31. If that had occurred, the district director could have reopened the taxable year of petitioner. There is no evidence that the taxable year of petitioner was reopened.

We find no merit whatever to respondent's contention that the Form 1040C *in this case* is not a return for purposes of commencing the

[2] It is possible that our holding is in some conflict with the rationale of our opinion in *Ludwig Littauer & Co.*, 37 B.T.A. 840 (1938). However, the issue in that case is not before us here. *Irving* v. *Gray*, 344 F. Supp. 567 (S.D. N.Y. 1972), on appeal (C.A. 2, Aug. 17, 1972); *Williamson* v. *United States*, an unreported case (N.D. Ill. 1969, 24 A.F.T.R. 2d 69–5561, 69–2 U.S.T.C. par. 9681), affirmed in an unreported opinion (C.A. 7, Apr. 8, 1971); contra, *Schreck* v. *United States*, 301 F. Supp. 1265 (D. Md. 1969); *Clark* v. *Campbell*, 341 F. Supp. 171 (N.D. Tex. 1972); *Rambo* v. *United States*, 353 F. Supp. 1021 (W.D. Ky. 1972).

running of the period of limitation on assessment. Respondent argues that it cannot be such a return because it is a condition imposed on a departing alien in order to leave the country. This argument leads nowhere. A district director is not required to hold collection of the tax in jeopardy by reason of the departure of the nonresident alien. Indeed, in the instant case $1,800 in tax was being held by the Lyric Opera. The district director must have satisfied himself that all taxes due the United States were collected because he authorized release of the withheld tax.

In 1966 petitioner again entered the United States and again had his taxable year terminated in order to obtain his certificate of compliance, yet the same district director who issued the 1965 certificate made no attempt to determine whether petitioner had income in 1965 in addition to that reported on the Form 1040C. Section 6851(a) provides that the Secretary or his delegate, at the time of terminating the taxable period, shall collect any tax due from a prior period.

The regulations require a departing alien to file a detailed return as a condition to leaving the country but that return does not inform him, even in English, that he must file another return as of December 31, and the respondent now contends that the Form 1040C is not a return. Respondent points to the question on the Form 1040C as to whether the taxpayer intends to file a Form 1040B as informing the taxpayer that he must file such a form. The return asks a question but does not state a requirement. We find the Form 1040C to be very detailed. The Form 1040C requires the departing alien to list sources of income and make other disclosures not even required on a Form 1040. After examining the Form 1040C filed by petitioner we believe that the district director audited the return. Although we are handicapped by a poor record in this case, no doubt due to the absence of petitioner by reason of his return to his native Italy, and his inability to speak and comprehend English, we believe the facts surrounding the filing of Form 1040C to be these.

We believe the "Schedule of Expenses Incurred," a typewritten schedule with handwritten numbers on accounting paper, was probably prepared for petitioner by Lyric Opera or some other agent of petitioner. Respondent, in his brief, argues that petitioner employed a certified public accountant to fulfill his income tax obligations for 1965. This is not a fact in this case. It was an allegation in the petition which respondent denied in his answer. We, therefore, do not find it to be a fact.

The schedule previously described bears a handwritten column entitled "Disallowances" setting forth amounts which are less than those enumerated for the specific items of expense. For example, on the line identified "Publicity and promotion," the amount first written follow-

ing such category is $1,078.42 and·in the "Disallowances" column the sum of $165 appears. The total expenses on the schedule are shown to be $8,372.10 from which the total of the "Disallowances" column of $647 is subtracted and the net of $7,725.10 is carried to the face of the return. It is inconceivable to us that a taxpayer would willingly file an income tax return indicating disallowed deductions; nor do we believe that anyone, including a certified public accountant, would advise him to do so.

We conclude from all of this that petitioner took the "Schedule of Expenses Incurred" to an office of the Internal Revenue Service and someone in that office examined his receipts for the expenses claimed and prepared for him a Form 1040C. The form is signed by petitioner and someone else whose signature is illegible and who also signed the portion of the return terminating petitioner's taxable year. We believe that such unidentified employee of the Internal Revenue Service examined the schedule petitioner brought with him and disallowed a a portion of the deductions and claimed the net of the deductions on the Form 1040C.

Respondent argues that if we adopt petitioner's view we are holding the regulations invalid. This is not so. The regulations requiring the filing of Form 1040B are not held to be invalid. The authority granted to the Secretary or his delegate is broad enough to require filing both returns. We merely hold that the Form 1040C is a return sufficient to commence the running of the period of limitation because the district director terminated the taxable year of petitioner. Respondent cites an unpublished special ruling wherein the Deputy Commissioner in 1950 held the following:

The filing of a Form 1040C necessitates an immediate termination of the taxable period of the individual and any normal tax and surtax exemption to which he may be entitled as prorated accordingly. The closing of such taxable period does not however, close the taxable year. A taxpayer whose taxable period has been terminated may file, and is required to file, a final return for the full taxable year at the expiration of such year.

That ruling was published prior to the enactment of section 6851(b), discussed below, and even if it were published after such enactment it is of doubtful authority and doesn't even rise to the dignity of a revenue ruling. How the Commissioner can expect a non-English-speaking alien to be guided by or especially bound by a ruling which is not even published is amazing. Moreover, a published revenue ruling is no more binding nor has any more legal force than the opening statements of counsel at the time of trial. *Estate of Shirley Morgan*, 52 T.C. 478, 484 (1969), affirmed per curiam 448 F. 2d 1397 (C.A. 9, 1971).

Respondent cites our opinion in *Matthew Klaas*, 36 T.C. 239 (1961), as being an example of a case where the alien filed a Form 1040B as

well as a Form 1040C but does not point out why that case has any bearing here. The issue in that case was whether the taxpayer and his wife, both citizens of Switzerland, were entitled to file a joint return in a year in which they were resident aliens of the United States at the beginning of the year, and nonresident aliens residing in Switzerland at the end of the year. The Court held that aliens who have a dual-resident status within a single taxable year are not entitled under section 6013 to file a joint return for that year. In *Klaas*, the taxpayer filed both the Form 1040C and Form 1040B. The Form 1040C was filed in order to obtain a certificate of compliance, and the Form 1040B was filed at the request of the Commissioner in conjunction with a claim for refund filed by the taxpayers. Thus, the taxpayer in *Klaas* voluntarily reopened his taxable year under the option granted to him by section 6851(b) in order to pursue his claim for refund. Any language in our opinion in *Matthew Klaas, supra*, with respect to what happens when neither the Commissioner nor the departing alien reopens the taxable year is dicta.

Our holding is fortified by the legislative history of section 6851(b) which was added as a new section to the Internal Revenue Code of 1954.

This section, except subsection (b), makes no material change from existing law. Subsection (b) is a new provision which permits the taxable year, once closed by the Secretary, to be reopened. Subsection (b) will apply, for example, in the case of an alien who departs from and returns to the United States within the 12-month period which would otherwise be his taxable year. Under existing law, such a taxpayer would have more than 1 taxable year in the same 12-month period. This section provides that the taxable year shall be reopened if the taxpayer files a true and accurate return of his items of gross income, deductions, and credits, together with such other information as may be required by regulations. [H. Rept. No. 1337, to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess., p. A421 (1954).]

In our view what Congress intended was a reopening of the taxable year of a departing nonresident alien if such alien received income or incurred expenses during a calendar year following the short-period terminated year. We conclude that the "true and accurate" return described above in the report of the House is the Form 1040B. Such interpretation seems to be consistent with section 6851(b) which provides:

(b) REOPENING OF TAXABLE PERIOD.—Notwithstanding the termination of the taxable period of the taxpayer by the Secretary or his delegate, as provided in subsection (a), the Secretary or his delegate may reopen such taxable period each time the taxpayer is found by the Secretary or his delegate to have received income, within the current taxable year, since a termination of the period under subsection (a). A taxable period so terminated by the Secretary or his delegate may be reopened by the taxpayer (other than a nonresident alien) if he files with the Secretary or his delegate a true and accurate return of the items of gross income and of the deductions and credits allowed under this title for such tax-

able period, together with such other information as the Secretary or his delegate may by regulations prescribe. If the taxpayer is a nonresident alien the taxable period so terminated may be reopened by him if he files, or causes to be filed, with the Secretary or his delegate a true and accurate return of his total income derived from all sources within the United States, in the manner prescribed in this title.

In the instant case the petitioner did not reopen his taxable year because he did not file a Form 1040B. The Commissioner did not reopen the taxable year. In neither his statutory notice of deficiency nor in the trial of this case, does the Commissioner assert that petitioner received any income in addition to that reported on the Form 1040C. The reopening of the taxable period by the Commissioner provided by section 6851(b) is the protection given the Commissioner to insure that if the alien reenters the United States during the calendar year, all income earned on the second visit will be reported. Respondent expressed great fears of such a condition if the Form 1040C were held to be a "return." The Commissioner has other means to determine whether the nonresident alien has received additional income such as the withholding provisions, the sources of information which the nonresident alien must disclose on his Form 1040C, and the provision in section 6020(b) whereby the Commissioner may file a return.

In view of our holding that the Form 1040C is a "return," it follows that petitioner's deductions for the short-period taxable year cannot be disallowed under the provisions of section 874. The Income Tax Regulations under section 874 do not indicate that a Form 1040B must be filed in order for the nonresident alien to claim his deductions. We hold that if such deductions are claimed on the Form 1040C as they were here and the taxable period is terminated by the district director and not reopened by the nonresident alien or the district director, the nonresident alien shall receive the benefit of the deductions because he has filed a true and accurate return of his income. Sec. 1.874–1(a), Income Tax Regs. This should especially be true where, as in the instant case, the return was examined by the Internal Revenue Service, some of the expenses were disallowed, and petitioner did not contest the disallowances.

We conclude that the myriad of procedures prescribed by the Commissioner in the regulations in his effort to insure that the United States collects all income taxes from departing nonresident aliens are adequate to that end without requiring a non-English-speaking alien to personally file a detailed return, have it audited and cleared, depart the country without being advised in writing that he must file another return in order to receive the benefit of his deductions, and then some 4 years later, receive a statutory notice of deficiency advising him that he did not file a return.

Reviewed by the Court.

> *Decision will be entered that there is no deficiency for the taxable year 1965, and the parties are directed to move or otherwise act with respect to further proceedings in this case with respect to the taxable year 1966 on or before August 1, 1973.*

SIMPSON, *J.*, concurring: I wholly agree with the results reached by the majority. In my opinion, such results are inconsistent with the rationale of this Court's opinion in *Ludwig Littauer & Co.*, 37 B.T.A. 840 (1938), but in my judgment, that rationale should no longer be followed. See *Schreck* v. *United States*, 301 F. Supp. 1265 (D. Md. 1969) ; see also *Rambo* v. *United States*, 353 F. Supp. 1021 (W. D. Ky. 1972) ; *Clark* v. *Campbell*, 341 F. Supp. 171 (N.D. Tex. 1972). Compare *Williamson* v. *United States*, an unreported case (N.D. Ill. 1969, 24 A.F.T.R. 2d 69–5561, 69–2 U.S.T.C. par. 9681).