JOSE E. MORE AND ADELA T. MORE, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 5404-67, 5868-67.    Filed April 5, 1976.

*Robert D. Whoriskey, William S. Robertson III, Nancy A.
Norman,* and *Ira Revich,* for the petitioners.[1]
*David N. Brodsky,* for the respondent.

TANNENWALD, *Judge:* In these consolidated cases, respondent
determined the following deficiencies in petitioners' Federal
income taxes:

| Docket No. | Year | Income tax | Addition to tax (sec. 6651(a)) |
| --- | --- | --- | --- |
| 5404-67 | 1962 | $7,768.25 | - - - |
| 5868-67 | 1963 | 59,370.48 | $3,705.19 |
| | 1964 | 93,676.87 | - - - |

All issues save one have been resolved, with the result that the
only question remaining for our consideration is whether the
petitioners are entitled to the benefits of income averaging under
sections 1301 through 1305 [2] for the taxable year 1964.

### FINDINGS OF FACT

Petitioners, husband and wife, resided in New York, N.Y., at
the time of filing their petitions herein. They filed Federal
income tax returns with the District Director of Internal
Revenue, New York, N.Y., for the taxable years 1960 through
1964. Neither petitioner filed a Federal income tax return for
1959.

Petitioners were Cuban residents at the time Fidel Castro
acceded to power on January 1, 1959. They had enjoyed much

---

[1] Albert J. Parreno was counsel of record for the petitioners at the time of filing the
petitions herein. Mr. Parreno died on June 11, 1972, prior to the time of trial.

[2] All references are to the Internal Revenue Code of 1954 as amended and in effect
during the year at issue.

affluence in Cuba where Jose was a sugar and stock broker. Both Jose and Adela owned valuable real and personal property in Cuba. When he realized that he could not successfully continue his business in Cuba under the new government, Jose resolved that his family would relocate in the United States. All of petitioners' property remaining in Cuba was expropriated by the Cuban Government under circumstances which respondent concedes constituted a deductible loss.

Jose held a Cuban passport issued on April 24, 1958, which contained a nonimmigrant visa issued by the American Embassy on October 8, 1958, "valid for unlimited applications for admission into the United States if presented before October 7, 1962." He was admitted to the United States and readmitted to Cuba on the following dates, remaining in the United States and Cuba during the intervening periods except as hereinafter noted:

| Admitted to United States | Readmitted to Cuba |
| --- | --- |
| Dec. 6, 1958 | Jan. 30, 1959 |
| Feb. 3 or 9, 1959 | Feb. 15, 1959 |
| Feb. 18, 1959 | Mar. 5, 1959 |
| Aug. 8, 1959 | Jan. 22, 1960 |
| Feb. 14, 1960 | Feb. 24, 1960 |
| Mar. 15, 1960 | |

Jose went to France from the United States on or about August 19, 1959, and returned to the United States on September 15, 1959.

Jose was not in Cuba after March 15, 1960. He applied for permanent residence status in the United States at Montreal, Canada, on June 20, 1961, and became a United States citizen on July 18, 1966.

Jose rented an apartment in New York for a number of years prior to August 8, 1959. He also utilized office space and secretarial services at Bache & Co. in New York, N.Y., starting in early 1959.

When Jose departed from Cuba in August 1959, he left his house in Havana open and occupied by two of his servants and he lived in that house during the periods when he was in Cuba prior to March 15, 1960. He worked actively in Cuba as a sugar broker until that date. Prior to that date, he utilized the same social clubs in Cuba of which he had been and continued to be a member.

In the early months of 1960, Jose's Havana brokerage office was placed under surveillance by the Cuban authorities, as was his house 3 days before he departed from Cuba on March 15, 1960. He realized at that time that his business in Cuba was "gone" and decided to stay in New York permanently. His brokerage office in Havana was closed in June or July of 1960.

Jose began his employment relationship with Bache & Co. in New York, N.Y., in March 1960, and first received a drawing account in that month or the following month.

### ULTIMATE FINDING OF FACT

Jose was a nonresident alien for at least part of 1960.[3]

### OPINION

After application of the net operating loss and net operating loss carryforwards arising from their Cuban expropriation losses, petitioners had no taxable income for the years 1960 through 1963. For the taxable year 1964, petitioners had taxable income of $204,747.19.

We have found as an ultimate fact and hold that Jose was a nonresident alien for part of 1960. We must now decide whether petitioners are precluded by that holding from obtaining the benefits of income averaging for 1964. This issue depends upon whether the entire year 1960 during part of which Jose was a nonresident or only that part of 1960 during which Jose was a resident alien is to be included in the 4-year base period for income averaging.

Section 1303(b) provides that an individual shall not be eligible for income averaging if such individual was a nonresident alien "at any time" during the computation year or during "the base period." The computation year is the year for which the taxpayer elects the benefits of averaging (sec. 1302(e)(1)), in this case 1964, and "the base period" is defined as "the 4 taxable years immediately preceding the computation year" (sec. 1302(e)(2)).[4]

---

[3] This finding coincides with the finding made from the bench at the conclusion of the trial except that it is somewhat broader in that the latter finding was pinpointed to Jan. 2, 1960. We have broadened our finding in order to avoid any possible question arising from the fact that Jan. 1, 1960, was a legal holiday—a question which, we note, neither party has raised.

[4] These sections presently appear in the Code as secs. 1302(c)(1) and 1302(c)(2), respectively.

Petitioners argue that Jose did not become subject to United States income tax until he became a resident alien and that therefore his 1960 "taxable year" consists of only that portion of the calendar year during which he had that status. Respondent argues that the entire calendar year 1960 must be taken into account in determining "the base period" and that therefore petitioners are ineligible for income averaging under section 1303(b). We hold for respondent.

Petitioners refer us to section 7701(a)(23) which defines the term "taxable year" as the calendar or fiscal year for which taxable income is computed or, in the case of a return made for a fractional part of a year, the period for which such return is made. Because section 871(a) provides for the taxation of non-resident aliens only on income received from sources within the United States and because Jose alleges he had no such income during that portion of 1960 when he was not a United States resident,[5] petitioners conclude that Jose had a "short taxable year" consisting of only that portion of the calendar year during which Jose was a United States resident and liable for Federal income taxes. Petitioners make further reference to section 1304(g)[6] for the proposition that short taxable years are includable as base period years. The regulations promulgated under section 1304(g) only address short taxable years recognized by section 443.[7] Petitioners concede that their situation does not fall within section 443, but argue that the general import of section 1304(g) is broader than the scope of respondent's regulations and section 443.

Petitioners' analysis of the applicable statutory provisions is misconceived. The concept of a "taxable year" is clearly articulated in the Code. Thus, section 7701(a)(23) contains the following definition:

TAXABLE YEAR.—The term "taxable year" means the calendar year, or the fiscal year ending during such calendar year, upon the basis of which the taxable income is computed under subtitle A. "Taxable year" means, in the case of a return made for a fractional part of a year under the provisions of subtitle A or

---

[5] Respondent does not challenge this point.

[6] Presently sec. 1304(f).

[7] Sec. 1.1304-7, Income Tax Regs., redesignated sec. 1.1304-6, Income Tax Regs., by T.D. 7196, 1972-2 C.B. 499. Sec. 443 admits of short taxable years in three situations: (1) Where a taxpayer has changed his annual accounting period, (2) where a taxpayer was not in existence for an entire taxable year, and (3) where a taxpayer's taxable year has been terminated for jeopardy.

under regulations prescribed by the Secretary or his delegate, the period for which such return is made.

Section 443 (contained in subtitle A) deals specifically with returns for a period of less than 12 months in three explicit situations, i.e., change of an annual accounting period, taxpayer not in existence for an entire taxable year, and termination of a taxable year for jeopardy. It is clear, as petitioners concede, that section 443 does not apply herein. It is not enough that a non-resident alien may not have any tax liability because he has no taxable income from United States sources. The fact is that, as a category, nonresident aliens are subject to United States income tax, albeit that their liability attaches only to certain types of income. See sec. 871, et seq.; *Georges Simenon,* 44 T.C. 820, 832-833 (1965); *Matthew Klaas,* 36 T.C. 239, 242-244 (1961); cf. *John C. Lee,* 6 B.T.A. 1005 (1927); see *Samann v. Commissioner,* 313 F. 2d 461, 464 (4th Cir. 1963) ("income may be taxed and untaxed during parts of the same year"). Consequently, Jose was not a taxpayer "not in existence" (see sec. 443(a)(2)) during that portion of 1960 preceding the time he became a resident alien.

Since Jose's circumstances in 1960 do not conform to those specified in section 443 and since Jose never attempted to adopt an annual accounting period other than the calendar year, Jose's 1960 taxable year must be deemed to be the calendar year. Sec. 441; sec. 1.441-1, Income Tax Regs. See *Georges Simenon, supra.* Essentially what petitioner seeks to do is to have us adopt a concept of a "taxable period" other than a calendar year and equate this period with a short "taxable year." This we have refused to do in the case of departing resident aliens whose taxable period was terminated pursuant to section 6851 and who sought to file a joint return for such period.[8] *Matthew Klaas, supra.* We see no reason for a different rule to obtain in respect of incoming aliens.

Finally section 6072(c) speaks only in terms of calendar or fiscal years with reference to nonresident aliens.

---

[8] Sec. 6013(a)(1) precludes the filing of a joint return for a taxable year in which either spouse was a nonresident alien at any time. We note that petitioners herein originally filed a joint return for 1960. They subsequently filed amended returns on a "married—filing separately" basis. Petitioners do not now claim that their original joint return was proper under sec. 6013 on the basis of their position that 1960 was a short taxable year during which neither spouse was a nonresident alien.

Thus, petitioners' concept of a "short taxable year" has no statutory foundation.

Respondent's long-standing policy has been to treat taxpayers such as Jose as dual-status taxpayers for the year in which residency is changed, to require of such taxpayers a tax return prepared on Form 1040 for the taxpayer's entire annual accounting period, and to report separately therein income derived during the taxpayer's period of residency and the taxpayer's period of nonresidency.[9] The requirement of making a full-year return is not altered or suspended by the fact that a taxpayer may have had no income taxable in the United States during his period of nonresidency. See p. 31 *supra.* The respondent's position in respect of this point has been cited with apparent approval in *Georges Simenon, supra.*

Finally, petitioners' interpretation of the income averaging provisions does violence to legislative intent. In enacting those provisions, Congress was particularly concerned that—

the individual's income must have been subject to tax by the United States throughout the entire base period as well as the computation year. No one is eligible for averaging who was a nonresident alien in any of the 4 base period years or in the computation year. [S. Rept. No. 830, 88th Cong., 2d Sess. 144 (1964), 1964-1 (Part 2) C. B. 505, 648.]

In the case of a citizen who had excludable foreign source income during the base period, Congress felt that, by requiring the taxpayer to add back his excludable foreign source income to his base period income, the above-stated policy could be effectuated. S. Rept. No. 830, *supra* at 142, 1964-1 (Part 2) C.B. at 646. Since no similar provisions obtain in respect of a taxpayer who was a nonresident alien having no income subject to Federal taxes during part of his base period, the intent of Congress in enacting section 1303(b) is plain, namely, that the nonresident alien not

---

[9] This policy dates back to G.C.M. 10759, XI-2 C.B. 99 (1932), and is more recently embodied in secs. 1.871-13(a) and 1.6012-1(b)(2)(ii)(*a*), Income Tax Regs. See also Rev. Rul. 56-365, 1956-2 C.B. 934, and I.R.S. Pub. No. 519, United States Tax Guide for Aliens (1975).

Petitioners also argue that this dual type of reporting for a year in which an alien changes residency bolsters their assertion that Jose had a short taxable year consisting of only that portion of the 1960 calendar year in which he had reportable income. But, the very provision cited by petitioners, sec. 1.6012-1(b)(2)(ii)(*a*), Income Tax Regs., contains language undermining their position: "If an alien individual becomes a citizen or resident of the United States *during the taxable year.*" (Emphasis added.) We note, however, that this regulation is only applicable for taxable years beginning after Dec. 31, 1966.

be afforded an undue tax advantage in the area of income averaging.[10]

We conclude that an alien's annual accounting period is his taxable year and such year is not affected by a change in residency status. In view of our holding that Jose was a nonresident alien for part of 1960, a base period year, we further conclude that petitioners are not eligible to elect income averaging for the taxable year 1964 under section 1303(b).

To reflect the parties' resolution of other issues,

*Decisions will be entered under Rule 155.*

---

[10] Under petitioners' theory, it would be of no matter whether an alien assumed United States residency on Jan. 2 or Dec. 30 of his first base period year so long as he had no income taxable in the United States during his period of nonresidency. In the latter case, conceivably, an alien could reside in this country for 1 day and have $1 or even no taxable income for his dual-status year and this 1 day would represent a "short taxable year" includable as a base period year over which subsequent years' income could be spread. The relief envisioned by the income averaging provisions surely was not intended to encompass this type of situation.