SEVERINO R. NICO, JR., AND TERESITA V. NICO, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 301–74. Filed January 10, 1977.

Severino R. Nico, Jr., pro se.
*R. E. Marum,* for the respondent.

HALL, *Judge:* Respondent determined the following deficiencies in petitioners' income tax for 1971:

| Severino R. Nico | Teresita V. Nico |
|---|---|
| $150.92 | $303.81 |

The issues for decision are:

(1) Whether petitioners are entitled to file a joint return for their year of entry into the United States.

(2) Whether petitioners are entitled to use the standard deduction for their year of entry into the United States.

(3) Whether petitioners are entitled to a deduction for their moving expenses incurred in their move from Manila, Philippines, to San Francisco, Calif.

(4) Whether respondent correctly computed petitioners' deductions for moving expenses arising from their move from San Francisco to New York City.

### FINDINGS OF FACT

Some of the facts have been stipulated by the parties and are found accordingly.

Petitioners, husband and wife, resided in New York City at the time of filing their petition herein. They filed a joint Federal income tax return for the calendar year 1971.

Prior to May 1971 petitioners were Philippine nationals. On April 23, 1971, they left Manila by plane for the United States. After stopovers in Taipei, Taiwan, and Tokyo, Japan, they arrived in Honolulu on May 2, 1971. Two days later petitioners flew from Honolulu to San Francisco. They remained in San Francisco until August 29, 1971, at which time they left for New York City.

Sometime after their arrival in San Francisco, petitioners received their alien registration cards which were mailed to them by the Immigration Office in Honolulu. On May 17, 1971, their personal belongings and clothing arrived by ship from the Philippines. While in San Francisco they also received several checks, two of which represented retirement contributions. The first of the retirement contribution checks, dated June 2, 1971, was for approximately $500, and the second, dated June 30, 1971, was for approximately $3,000. They also received two checks from their bank in Manila sometime before August 1971. These checks of approximately $400 each represented their savings and the proceeds from the sale of their furniture in the Philippines.

Prior to leaving the Philippines, Severino R. Nico, Jr. (Severino), had been employed as an attorney with the United States Veterans' Administration in Manila. Although a member of the Philippine bar, he was not admitted to practice in any jurisdiction in the United States. He left the Philippines with the intention of resuming employment with the Veterans' Administration once he had met the agency's employment qualifications.[1] Teresita V. Nico (Teresita) had also been employed with the Veterans' Administration while in the Philippines.

After arriving in San Francisco, petitioners stayed temporarily in a hotel. On May 6, 1971, they signed a 4-month lease on a furnished apartment. Eight days later Teresita began work in San Francisco with California Blue Cross. Severino, unable to find work as a law clerk in San Francisco, took a temporary job with Anthony Enterprises. He left this position after 2 days, and on June 23, 1971, commenced employment with the State of California. Teresita resigned her position on August 14, 1971, and Severino resigned on August 23, 1971.

On August 29, 1971, petitioners left San Francisco by bus for New York City. They traveled for 9 days and 8 nights. After arriving in New York City on September 6, 1971, they both soon found employment. Teresita began work on September 14, 1971, and Severino began as a law clerk on October 14, 1971. They were unable, however, to obtain an

---

[1] These qualifications required Severino to be admitted to the bar of a jurisdiction within the United States and to be a United States citizen.

apartment immediately, and, as a consequence, lived in hotels and ate in restaurants until October 1, 1971.

Petitioners filed a purported joint income tax return for 1971, and adopted the calendar year as their accounting period. They deducted the travel expenses and temporary lodging and meal expenses incurred in their move from San Francisco to New York City, as well as their moving expenses incurred in the move from Manila to San Francisco. They also used the standard deduction in computing their taxable income. Respondent in his notices of deficiency disallowed in its entirety the moving expense deduction attributable to the move from Manila to San Francisco, and reduced the claimed amounts for meals and incidentals attributable to the move from San Francisco to New York City. Respondent also determined that petitioners were not entitled to file a joint return or elect the standard deduction because they were nonresident aliens for a part of the calendar year 1971.[2]

## OPINION

The first issue is whether petitioners may file a joint return in computing taxable income for their year of entry into the United States. Petitioners do not dispute that they were nonresident aliens prior to May 2, 1971. They instead contend that their 1971 return covered only the short taxable year May 2, 1971, to December 31, 1971, the period of time during which they were resident aliens. Respondent disagrees and asserts that petitioners' taxable year was the calendar year 1971, and since petitioners were nonresident aliens during a part of 1971, they are not entitled to file a joint return. We agree with respondent.

---

[2] In his statutory notices of deficiency, respondent treated the earnings of each petitioner as his separate property. Thus, in computing Teresita's tax liability respondent included in gross income all of the wages she received while residing in California, and in computing Severino's tax liability respondent included in gross income all the wages Severino received while residing in California. However, under California law, in the absence of a transmutation agreement, the earnings of a husband and wife are community property (Cal. Civ. Code sec. 5110; *Woods v. Security First National Bank of Los Angeles*, 46 Cal. 2d 697, 299 P.2d 657 (1956)), and where separate returns are filed by a husband and wife, each is required to report one-half of the community earnings. *United States v. Malcolm*, 282 U.S. 792 (1931). Since petitioners have failed to raise this issue at trial or on brief and since the apparent oversight produced only a minor error in the asserted deficiency, we will not consider this issue herein.

Section 6013[3] provides generally that a husband and wife may file a joint income tax return *except* where either is a nonresident alien "at any time during the taxable year." The crucial question thus becomes whether petitioners' taxable year is the entire 1971 calendar year or only that portion of it subsequent to their move to the United States.

The term "taxable year" is defined in section 7701(a)(23) as the calendar year or fiscal year for which taxable income is computed, or, in the case of a return made for a fractional part of a year, the period for which such return is made. Returns for a period less than 12 months, i.e., short periods, are required by section 443(a)(2) where a taxpayer is not in existence for the entire taxable year. Petitioners argue that they were taxpayers "not in existence" prior to May 2, 1971, and, as a consequence, their "taxable year" is the fractional part of the calendar year 1971 commencing after May 2, 1971. We have recently considered a similar question in *Jose E. More,* 66 T.C. 27, 32 (1976),[4] on appeal (2d Cir., Oct. 22, 1976). There we were faced with the question of whether the taxpayer was eligible to use the income averaging provisions of sections 1301 through 1305 where he was a dual-status (resident and nonresident alien) taxpayer during the initial base period taxable year. We stated that a dual-status taxpayer is not a taxpayer "not in existence" in the portion of the year preceding the time he becomes a resident alien. We went on to say:

Respondent's long-standing policy has been to treat taxpayers such as Jose as dual-status taxpayers for the year in which residency is changed, to require of such taxpayers a tax return prepared on Form 1040 for the taxpayer's entire annual accounting period, and to report separately therein income derived during the taxpayer's period of residency and the taxpayer's period of nonresidency.[9] The requirement of making a full-year return is not altered or suspended by the fact that a taxpayer may have had no income taxable in the United States during his period of nonresidency.

---

[3] All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue.

[4] In *Jose E. More,* 66 T.C. 27 (1976), the taxpayer conceded that he was not a taxpayer "not in existence" for purposes of sec. 443, but argued that he was nevertheless entitled to use a short taxable year for his year of entry into the United States.

\* \* \* The respondent's position in respect of this point has been cited with apparent approval in *Georges Simenon* [44 T.C. 820, 832–833 (1965)].

---

[9] This policy dates back to G.C.M. 10759, XI–2 C.B. 99 (1932), and is more recently embodied in secs. 1.871–13(a) and 1.6012–1(b)(2)(ii)*(a)*, Income Tax Regs. See also Rev. Rul. 56–365, 1956–2 C.B. 934, and I.R.S. Pub. No. 519, United States Tax Guide for Aliens (1975).

Petitioners also argue that this dual type of reporting for a year in which an alien changes residency bolsters their assertion that Jose had a short taxable year consisting of only that portion of the 1960 calendar year in which he had reportable income. But, the very provision cited by petitioners, sec. 1.6012–1(b)(2)(ii)*(a)*, Income Tax Regs., contains language undermining their position: "If an alien individual becomes a citizen or resident of the United States *during the taxable year.*" (Emphasis added.) We note, however, that this regulation is only applicable for taxable years beginning after Dec. 31, 1966.

We conclude that petitioners were not taxpayers "not in existence" during that portion of the calendar year 1971 preceding the time they became resident aliens and are not permitted to file short-period returns for 1971. Since petitioners' 1971 taxable year was not a short period and since they did not adopt a fiscal year, their 1971 taxable year was the calendar year. Sec. 441; sec. 1.441–1, Income Tax Regs. Petitioners' contention, moreover, is inconsistent with section 1.871–13(a)(1), Income Tax Regs. In view of this conclusion, we hold that petitioners are not eligible to file joint income tax returns for the taxable year 1971.

The second issue is whether petitioners are eligible to use the standard deduction in computing their taxable income for the calendar year 1971. Section 142(b)(1) provides that the standard deduction shall not be used in computing the taxable income of a nonresident alien. Section 142(b)(1) does not contain language corresponding to section 6013's "at any time during the taxable year." Respondent has ruled, and asserts here, however, that an individual who is a nonresident alien at any time during the taxable year is ineligible to use the standard deduction. Rev. Rul. 64–60, 1964–1 C.B. (Part 1) 84. See also Rev. Rul. 74–239, 1974–1 C.B. 372; Rev. Rul. 73–62, 1973–1 C.B. 57. Petitioners assert both that respondent's interpretation of the statute is invalid and that their taxable year was a short taxable year for the period May 2, 1971, to December 31, 1971. We disagree with petitioners' assertion that theirs was a short taxable year for the same reasons that led us to reject their argument with respect to section 6013. Their argument with respondent's interpretation of section 142, however, gives us pause.

Section 142 is ambiguous at best. However, the language of section 1.871–13(a)(1), Income Tax Regs., viewed by itself, seemingly leads to the conclusion that petitioners are eligible to take the standard deduction with respect to their adjusted gross income for the portion of their taxable year 1971 that they were resident aliens. That regulation provides:

(a) *In general.* (1) An individual who is a citizen or resident of the United States at the beginning of the taxable year but a nonresident alien at the end of the taxable year, or a nonresident alien at the beginning of the taxable year but a citizen or resident of the United States at the end of the taxable year, is taxable for such year as though his taxable year were comprised of two separate periods, one consisting of the time during which he is a citizen or resident of the United States and the other consisting of the time during which he is not a citizen or resident of the United States. Thus, for example, the income tax liability of an alien individual under chapter 1 of the Code for the taxable year in which he changes his residence will be computed under two different sets of rules, one relating to resident aliens for the period of residence and the other relating to nonresident aliens for the period of nonresidence. However, in determining the taxable income for such year which is subject to the graduated rate of tax imposed by section 1 or 1201 of the Code, all income for the period of U.S. citizenship or residence must be aggregated with the income for the period of nonresidence which is effectively connected for such year with the conduct of a trade or business in the United States.

If we are to follow this regulation literally, the set of rules relating to resident aliens must be applied for the period of residence. Clearly, a person who is a resident alien for an entire taxable year is entitled to take the standard deduction. Section 142, unlike such provisions as section 6013, does not by its terms preclude the application of the proration device of the regulations. It is simply silent about the case of the dual-status year. The regulation states clearly enough that the resident alien set of rules is to be applied to the period of residence. The availability of section 142 is one of such rules. However, in the examples in the regulations (sec. 1.871–13(e)), without explanation, the calculations of taxable income are made using specific deductions rather than the standard deduction although in each case it would have been to the taxpayer's benefit to use the standard deduction. This internal inconsistency in the regulation is nowhere explained.

On brief the respondent relies on Rev. Rul. 64–60, 1964–1 C.B. (Part 1) 84, and two Memorandum Opinions of this

Court.[5] Both the ruling and the two opinions antedate the promulgation of regulation section 1.873–13 even in proposed form.[6] Accordingly, they could not have and did not consider the impact of the new regulation. Furthermore, we consider neither revenue rulings[7] nor Memorandum Opinions of this Court to be controlling precedent.

Since the regulation was proposed, respondent has published two more revenue rulings (Rev. Rul. 74–239, 1974–1 C.B. 372, and Rev. Rul. 73–62, 1973–1 C.B. 57) which rely in part on Rev. Rul. 64–60 but which do not mention regulation section 1.871–13(a)(1). Respondent's interpretation of section 142 may seem unnecessarily unfair to the dual-status taxpayer. However, we conclude that the regulation as a whole, while cryptic and internally inconsistent, and in its text seemingly at odds with Rev. Rul. 64–60, was intended to reaffirm Rev. Rul. 64–60 through the examples. Where Congress writes an ambiguous statute the Treasury is free to issue regulations interpreting it. *Koshland v. Helvering*, 298 U.S. 441, 446 (1936). While the matter is not free from doubt, we hold that the effect of the regulation is to preclude an alien who was a nonresident alien during any part of his taxable year from using the standard deduction in computing his taxable income. We cannot conclude that failure to provide for the standard deduction in the examples was inadvertent, particularly in view of the Service's repeatedly expressed administrative policy.

The next issue is whether petitioners are entitled to a deduction for moving expenses arising from their move from Manila to San Francisco. Resolution of this issue depends on whether petitioners' stay in San Francisco constituted a stopover or whether San Francisco was petitioners' new principal place of work. If, as petitioners contend, the stay was a stopover in an overall move from Manila to New York City, then they are entitled to deduct the reasonable moving

---

[5] *Donald G. Baddock*, 27 T.C.M. 289 (1968); *Robert H. Hoyle*, 29 T.C.M. 760, 761 n. 2 (1970).

[6] Regulation sec. 1.871–13 was proposed Oct. 5, 1971, and adopted Dec. 20, 1974, by T.D. 7332.

[7] *Estate of Grace E. Lang*, 64 T.C. 404, 406–407 (1975), on appeal (9th Cir., Jan. 6, 1976, by respondent, and Jan. 9, 1976, by petitioner), and cases cited therein. See also *Industrial Valley Bank & Trust Co.*, 66 T.C. 272, 280 (1976).

expenses incurred in the overall move. However, if San Francisco was petitioners' new principal place of work, as respondent asserts, then petitioners have failed to satisfy the requirements of section 217(c)(2) that during the 12-month period immediately following their arrival in San Francisco they remained full-time employees during at least 39 weeks.

Petitioners have failed to present any convincing evidence that they left the Philippines with the intention of moving to New York City where they hoped to find employment. Moreover, we are of the opinion that they did not stay in San Francisco solely for the purpose of awaiting delivery of their personal possessions from the Philippines, their alien registration cards, the proceeds from the sale of their furniture, and their retirement contributions. Neither petitioner had secured employment in New York City prior to September 1971. In addition, they began to put down permanent roots in San Francisco. Severino first attempted to find employment as a law clerk. Unable to find such employment, he accepted a job with the State of California. Teresita also accepted a position in San Francisco. Both jobs were full-time positions and apparently of permanent duration. In light of these facts, we hold that San Francisco was their "new principal place of work" following their move to the United States. Petitioners remained in San Francisco only 4 months. As a consequence, petitioners did not meet the 39-week requirement of section 217(c)(2), and therefore are not entitled to deductions for their Manila to San Francisco moving expenses.

Petitioners argue alternatively that they are entitled to a deduction for their Manila to San Francisco moving expenses under either section 162 (business expense) or 212 (expense for production of income). We disagree and hold that petitioners' moving expenses constitute personal expenses and are nondeductible except to the extent provided in section 217 (moving expense). *Lloyd G. Jones,* 54 T.C. 734, 741 (1970), affd. 444 F.2d 508 (5th Cir. 1971); *Ritter v. United States,* 393 F.2d 823, 830 (Ct. Cl. 1968), cert. denied 393 U.S. 844 (1968).

The final issue is whether petitioners are entitled to a deduction under section 217 for San Francisco to New York City moving expenses in excess of the amounts allowed by respondent. Petitioners contend that respondent incorrectly computed the cost of their meals consumed en route from San

Francisco to New York City and during their period of temporary residence in New York City. Respondent asserts that the amounts allowed for meals are reasonable and that petitioners have failed to show that they are entitled to additional allowances, and we agree. Petitioners have failed to substantiate any of their claimed expenses for food. Therefore we hold that petitioners are not entitled to section 217 moving expense deductions in excess of the amount allowed by respondent.

*Decision will be entered for the respondent.*