**Severino R. NICO, Jr. and Teresita V. Nico, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 95, Docket 77–4090.

United States Court of Appeals, Second Circuit.

Argued Oct. 19, 1977.

Decided Nov. 15, 1977.

Severino R. Nico, Jr. and Teresita V. Nico, pro se.

William A. Friedlander, Atty., Tax Div., Dept. of Justice, Washington, D.C. (M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Leonard J. Henzke, Jr., Attys., Tax Div., Dept. of Justice, Washington, D.C.), for respondent-appellee.

Before MULLIGAN and TIMBERS, Circuit Judges, and BONSAL, District Judge.*

MULLIGAN, Circuit Judge:

Appellants Severino Nico, and his wife, Teresita Nico were Philippine nationals who came to the United States in May, 1971. It is conceded that no income earned by either prior to their residency in the United States is taxable here. The issue is the proper computation of the tax on their income earned in the United States after they assumed residency here. This appeal is from a decision of the United States Tax Court and involves their liability for federal income taxes for the taxable year 1971 which amounts to $150.92 for Severino and $303.81 for Teresita. The facts are fully set forth in the findings and opinion of the Tax Court, reported at 67 T.C. 647 (1977). While the facts are simple and the sum

* Dudley B. Bonsal, United States District Judge for the Southern District of New York, sitting by designation.

involved is modest, the solution to the issues here is complicated by the pertinent provisions of the Internal Revenue Code and the regulations which are hardly as clear as the noonday sun.

I

The appellants urge that under 26 U.S.C. § 443(a)(2)[1] they were not taxpayers "in existence" for the full calendar year 1971 but only for that part commencing with their arrival in the United States. They argue that therefore they were entitled to use a short tax year which excludes the period of nonresidency.

The same contention was considered and rejected by the Tax Court in *Jose E. More,* 66 T.C. 27 (1976), aff'd without opinion, No. 76–4235 (2d Cir., June 24, 1977). The Tax Court here followed its prior decision in *More.*

■ The Internal Revenue Code defines a taxpayer as "any person subject to any internal revenue tax." 26 U.S.C. § 7701(a)(14). Appellants have taken the position that since neither taxpayer here had income subject to United States internal revenue tax prior to May, 1971 they were not "taxpayers in existence" under 26 U.S.C. § 443(a)(2) for the period of nonresidency. The Commissioner has demonstrated a long standing policy of requiring alien taxpayers who were residents and nonresidents in the same taxable year to make a full-year return despite the fact that a taxpayer may have had no income taxable by the United States during his period of nonresidency. We agree with the Commissioner that an individual who has died prior to the end of his taxable year is not a taxpayer in existence under the Code. Similarly a corporation, prior to its formation or after

its dissolution during a taxable year, may be properly considered pro tanto not to be in existence. Treas. Reg. § 1.443–1(a)(2). However, a nonresident alien who is alive, is clearly in existence and is subject to tax on any income earned in the United States. Had the Congress intended to include nonresidence as a basis for utilization of a short tax year, it could have done so explicitly. To equate nonresidency with non-existence would require a strained reading which cannot sensibly comport with the congressional intent. We therefore agree with the analysis of the Tax Court in *More* and find the present case indistinguishable on its facts. Consequently, the appellants' tax year was the calendar year of 1971.

■ Thus, it follows inexorably that the appellants were not entitled to file a joint tax return for 1971. Section 6013(a)(1) prohibits the filing of a joint return by a husband and wife "if either the husband or wife at any time during the taxable year is a nonresident alien."[2] Since both taxpayers were admittedly nonresident aliens during part of the year 1971, they are expressly prohibited from filing a joint return. We affirm the Tax Court's decision on this issue.

II

The appellants further contend that as resident aliens they were entitled to elect the standard deduction for their taxable income earned while in the United States. Section 142(b)(1) of the Code provides that "the standard deduction shall not be allowed in computing the taxable income of (1) a nonresident alien individual." It would appear to follow therefore that a resident alien would be entitled to take a standard deduction with respect to taxable

---

1. 26 U.S.C. § 443(a)(2) provides:
   (a) Returns for short period.—A return for a period of less than 12 months (referred to in this section as "short period") shall be made under any of the following circumstances:
   (2) Taxpayer not in existence for entire taxable year.—When the taxpayer is in existence during only part of what would otherwise be his taxable year.

2. In an amendment having no bearing on this appeal, § 6013 was amended to allow a nonresident alien married to a citizen or resident alien to elect to be treated as a resident for purposes of determining income and upon such election the couple was allowed to file a joint return. Pub.L. 94–455, § 1012(a)(1), 90 Stat. 1612, codified as 26 U.S.C. § 6013(g).

income earned during his residency in the United States. *Expressio unius est exclusio alterius.*[3] Indeed, it is conceded that if the appellants had been resident aliens for the entire calendar year of 1971 they would be entitled to a standard deduction. The Tax Court, however, found the section's language to be ambiguous, not clearly covering dual status taxpayers such as the appellants who were nonresident and resident aliens during the same taxable year. As we have indicated, in the case of the filing of a joint return the Code in § 6013(a)(1) explicitly bars such a return if either husband or wife was a nonresident alien "*at any time during the taxable year*" (emphasis supplied). The absence of such qualification in § 142(b)(1) would seemingly support appellants' contention that they are entitled to take the standard deduction for that period when their income was earned as residents of the United States.

*Arguendo,* ambiguity does exist, the Commissioner contends that great deference should be given to the rulings of the Internal Revenue Service which is charged with administration of the statute, and that these rulings should be sustained even though there may be another reasonable reading which the court might think preferable. *United States v. Correll,* 389 U.S. 299, 306–07, 88 S.Ct. 445, 19 L.Ed.2d 537 (1967); *Commissioner of Internal Revenue v. Stidger,* 386 U.S. 287, 296, 87 S.Ct. 1065, 18 L.Ed.2d 53 (1967). We, of course, agree with this principle. The question therefore becomes what position has the Commissioner taken and has this position been consistent. Rev.Rul. 64–60, 1964–1 Cum.Bull. (Pt. 1) 84, explicitly held, "The standard deduc-

tion is allowable only to an individual who is a United States citizen or a resident alien for the entire taxable year." Two memorandum opinions of the Tax Court are in accord. *Donald G. Baddock,* 27 T.C.M. 289 (1968); *Robert H. Hoyle,* 29 T.C.M. 760, 761, n. 2 (1970).[4]

However, the appellants rely upon Treas. Reg. § 1.871–13(a)(1) which provides:

(1) An individual who is a citizen or resident of the United States at the beginning of the taxable year but a nonresident alien at the end of the taxable year, or a nonresident alien at the beginning of the taxable year but a citizen or resident of the United States at the end of the taxable year, is taxable for such year as though his taxable year were comprised of two separate periods, one consisting of the time during which he is a citizen or resident of the United States and the other consisting of the time during which he is not a citizen or resident of the United States. *Thus, for example, the income tax liability of an alien individual under chapter 1 of the Code for the taxable year in which he changes his residence will be computed under two different sets of rules, one relating to resident aliens for the period of residence and the other relating to nonresident aliens for the period of nonresidence.* However, in determining the taxable income for such year which is subject to the graduated rate of tax imposed by section 1 or 1201 of the Code, all income for the period of U.S. citizenship or residence must be aggregated with the income for the period of nonresidence which is effectively connected for such year with the conduct of a trade or business in the United States.

---

**3.** See *Nat'l R. R. Passenger Corp. v. Nat'l Ass'n of R. R. Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974).

**4.** There have been two subsequent revenue rulings which reaffirmed Rev.Rul. 64–60. Rev. Rul. 74–239, 1974 Cum.Bull. 372; Rev.Rul. 73–62, 1973–1 Cum.Bull. 57. But neither of these makes any reference to Treas.Reg. § 1.871–13. Although that regulation was not approved until 1974, it applies to all taxable years beginning after December 31, 1966. The preamble to the final regulation as approved states that the rules for taxing a dual status alien taxpayer are

found in Treas.Reg. § 1.871–13 and that this represents a change in the Income Tax Regulations. TD7332, Mertens, Federal Income Taxation, 1973–1974 Regulations 1471. Thus, the continued relevance of Rev.Rul. 64–60 and its progeny is doubtful. In addition, such rulings "not promulgated by the Secretary [of the Treasury] are of little aid in interpreting a tax statute." *Biddle v. Commissioner of Internal Revenue,* 302 U.S. 573, 582, 58 S.Ct. 379, 383, 82 L.Ed. 431 (1938); *Bartels v. Birmingham,* 332 U.S. 126, 132, 67 S.Ct. 1547, 91 L.Ed. 1947 (1947).

(2) For purposes of this section, an individual is deemed to be a citizen or resident of the United States for the day on which he becomes a citizen or resident of the United States, a nonresident of the United States for the day on which he abandons his U.S. residence, and an alien for the day on which he gives up his U.S. citizenship.

(Emphasis supplied.) This regulation was approved on December 20, 1974 long after the issuance of Rev.Rul. 64–60 and the decisions of the two Tax Court cases relied on by the appellee. The Tax Court therefore properly rejected them as controlling precedent. The question therefore becomes how do we interpret Treas.Reg. § 1.871–13(a). The italicized language provides that if an alien individual changed his residence during the taxable year (as the appellants did) his tax liability is to be computed under "one rule relating to resident aliens for the period of residence and the other relating to nonresident aliens for the period of nonresidence." Although as we have noted, the Code by its terms precludes the alien who has been a nonresident at any time during the taxable year from filing a joint return, the Code without any reference to dual status cases simply bars the use of the standard deduction to the nonresident alien in § 142(b)(1). If we assume, as the Tax Court did and the Commissioner does, that this leaves the issue ambiguous in the case of the dual status alien, then the 1974 Treasury Regulation which we have set forth supports the contention of the appellants that their taxable income during the period of their residence does qualify for the standard deduction.[5] The Tax Court in fact so held, stating that, "If we are to follow this regulation literally, the set of rules relating to resident aliens must be applied for the period of residence." 67 T.C. at 653.

Nonetheless, the Tax Court ruled against the appellants finding Treas.Reg. § 1.871–13 "cryptic and internally inconsistent" because in the illustrative examples provided in Treas.Reg. § 1.871–13(e) the calculations of taxable income are made using specific deductions rather than the standard deduction "although in each case it would have been to the taxpayer's benefit to use the standard deduction." 67 T.C. at 653. We cannot agree with the unsupported proposition that non-pertinent illustrations render the text of a regulation internally inconsistent. None of the three hypotheticals provided in subdivision (e) purport to illustrate the general rule in subdivision (a)(1) relied on by the appellants. Example (1) illustrates the treatment of income earned as a nonresident but received as a resident which relates to the rule set forth in subdivision (b) of Treas.Reg. § 1.871–13. The exclusion of dividends received while a nonresident which relates to the rule set forth in subdivision (d)(3) is illustrated in the second example. Example (3) demonstrates the application of the rule set forth in subdivision (d)(2) concerning the limits of deductions for personal exemptions. Nowhere do the examples mention the standard deduction. Hence the use of specific deductions *en passant* in the illustrations can hardly be deemed to contradict the clear language of Treas.Reg. § 1.871–13(a) which the Tax Court found to literally support the appellants' position.

■ We therefore reject the Tax Court's holding that the regulation which it construed to be at odds with Rev.Rul. 64–60, *supra*, was actually intended to reaffirm that ruling. On this appeal the Commissioner, not surprisingly departing from the Tax Court's position on this point, has urged that Treas.Reg. § 1.871–13(a)(1) does not at all support the appellants' contention. The argument made is that while the regulation provides for two sets of rules for dual status taxpayers, it does not announce what those rules are. Thus, we beg the question at issue if we assume that resident aliens are entitled to use the standard deduction in all cases. While this court by all means eschews *petitio principii*, we do not consider that the fallacy is here embraced. The regulation explicitly provides that two

---

5. "[I]f doubt exists as to the construction of a taxing statute, the doubt should be resolved in favor of the taxpayer . . . ." *Hassett v. Welsh*, 303 U.S. 303, 314, 58 S.Ct. 559, 565, 82 L.Ed. 858 (1938).

"*different*" sets of rules apply, "one relating to resident aliens for the *period of their residence*" (emphasis supplied). This language is certainly at odds with the Commissioner's interpretation that the period of residence is to be disregarded and that the standard deduction is only available if the alien is in residence for his whole taxable year. Since the Congress in Code § 142(b)(1) only interdicted nonresident aliens from the use of the standard deduction and did not make any comparable provision for resident aliens, the regulation on its face supports the view that the resident alien is to be governed by a different rule for that income taxable during the period of his residency. Thus, finding the regulation to contradict the Commissioner's earlier rulings on the question, the usual deference due to the administrative agency's interpretation of the statute is not to be accorded since its position has been inconsistent. *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 858 n. 25, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975).

The Commissioner, on appeal, also maintains that the standard deduction is an arbitrary allowance designed to reflect an assumed average relationship between the income level of a taxpayer for the entire year and an assumed level of expenses for deductible items. Here it is argued that a very substantial part of the taxpayers' 1971 income was earned in the Philippines prior to their departure to the United States on May 2, 1971. The implication is that this provides the appellants with an unfair advantage. The difficulty we find with this position is that presumably the nonresident alien will be taxed on his foreign income by the jurisdiction where it was earned. Whether that rate is higher or lower than that of the United States is irrelevant. The point is that the standard deduction is arithmetically geared to the amount of in-

come taxable in the United States and not to the period within the taxable year in which it was earned. The Congress has not seen fit to tailor the tax rate on a case by case basis depending upon the amount of income earned here or abroad by the resident alien. How much he earns in another jurisdiction is not germane, in our view, to the issue before us. As we read the Code and the regulation relied upon, the resident alien is entitled to the standard deduction for that income earned during the period of his residency in the taxable year. We agree that the issue is difficult and that the statutory and regulatory language could be more definitive. However, we cannot see how our reading creates any inequity—on the contrary it seems to result in an equitable solution.[6]

■ While it may now be academic we have considered appellants' argument that they are entitled to take a deduction for moving expenses and find it to be without merit. The Tax Court's finding that the appellants intended to remain in San Francisco on entry and that it was not a mere temporary stopover was a finding of fact which we cannot characterize as clearly erroneous. *Fleischer v. Commissioner of Internal Revenue*, 403 F.2d 403, 405–06 (2d Cir. 1968).

We affirm the Tax Court decision in all respects except that we reverse the finding that the appellants are not entitled to the standard deduction. We remand for a computation of tax liability in accordance with this opinion.

---

6. The Commissioner has urged with little support in the legislative history that his interpretation gives effect to the congressional intent behind § 142(b)(1) and the policy underlying the standard deduction. "Reliance on legislative history in divining the intent of Congress is, as has often been observed, a step to be taken cautiously." *Piper v. Chris-Craft Industries*, 430 U.S. 1, 26, 97 S.Ct. 926, 941, 51

L.Ed.2d 124 (1977). In the absence of any evidence in that history, we are unwilling to resort to vague policy arguments to contradict the statutory language. "We must be wary against interpolating our notions of policy in the interstices of legislative provisions." *Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4, 11, 62 S.Ct. 875, 880, 86 L.Ed. 1229 (1942).