LAYMON C. CHRISTIE and JUNE H. CHRISTIE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Christie v. Commissioner
Docket No. 489-75.
United States Tax Court
T.C. Memo 1980-64; 1980 Tax Ct. Memo LEXIS 525; 39 T.C.M. (CCH) 1172; T.C.M. (RIA) 80064; March 5, 1980, Filed Laymon C. Christie, pro se. Glenn D. Wilkinson, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioners' income tax return for calendar year 1972 in the amount of $1,337.34. The issues for decision are whether petitioners are entitled to (1) a medical expense deduction under section 213, I.R.C. 1954, [1] and, if so, the amount thereof, (2) an interest deduction under section 163 in excess of $710.84, [2] (3) a deduction for child care expenses under section 214 and, if so, the amount thereof, (4) deductions in connection with rental property and, if so, the amount thereof, [3] (5) a moving expense deduction under section 217 and, if so, the amount thereof, and (6) a casualty loss deduction resulting from moving damages. *527 FINDINGS OF FACT Petitioners Laymon C. Christie and June H. Christie, husband and wife, who resided in Pirmasens, Germany, at the time of filing their petition in this case, filed a joint Federal income tax return for calendar year 1972 with the Manhattan District Director of Internal Revenue. Prior to December 1971, petitioners lived in Agana, Guam, where Mr. Christie worked as a civilian for the United States Government. In December 1971, petitioners moved from Guam to Euless, Texas, primarily at the expense of the United States Government. Petitioners' air travel was routed through Hawaii and terminated in San Francisco, California, where petitioners met their automobile which had been shipped ahead. However, petitioners' car was damaged in transit. Because petitioners were required to await automobile repairs, their automobile trip to Euless was delayed. Consequently, petitioners sent their children by airplane to Euless. While petitioners lived abroad, they rented their home in Euless, Texas, between August 1968 and August 1971. Thereafter the lessees abandoned the house. After the abandonment but prior to petitioners' return to Euless the residence was vandalized. *528 Beginning with their return to Euless, Texas, in December 1971, petitioners made numerous improvements and repairs to the property. From January 1972 to the end of February 1972 Mrs. Christie lived in the house. During a part of this time Mr. Christie lived in the house and he personally did work in making repairs and improvements to the house. During March, April, and May 1972 the house was rented to a third party. From June until November 1972, although the house was available for rent, it remained vacant. In November petitioners sold the house for approximately $21,000. With respect to the Euless property petitioners made certain expenditures in 19728 including: Purpose of Payee
Date
Amount
Payment
Fleet-Rall Mortgage
3-7-72
$151.33
Mortgage payment
Corp.
on Euless, Texas,
house
Fleet-Rall Mortgage
7-21-72
157.72
Mortgage payment
Corp.
on Euless, Texas,
house
Apollo Plumbing
3-10-72
72.50
New waterline for
Euless, Texas,
house
Welborn Mortgage Corp.
3-11-72
40.00
F.H.A. appraisal
In addition to the above expenditures, to conform with city specifications petitioners paid for the installation *529 of a new sewer line at the Euless property. On December 27, 1971, petitioners established at the Airlington National Bank in Arlington, Texas, a repairs and maintenance escrow account for the Euless property. At that time petitioners opened the escrow account with a deposit of $1,000 and on December 30, 1971, added $500 thereto. Petitioners issued checks from that account to cover expenditures for plumbing work, for painting, and for replacing carpets, a sliding glass door, tile, and walls as follows: Date Payee
Issued
Amount
Cash
12-29-71
$ 75.00
Deaton Plumbing
12-27-71
11.40
F. D. Fuller
12-30-71
100.00
Lawrence Macias
12-30-71
182.50
A-1 Metropolitan
Plumbing
12-28-71
94.00
Mid-Cities Floors
12-30-71
481.00
Mr. John's Draperies
12-29-71
222.11
Aquarian Maintenance Svc
12-29-71
261.00
F. D. Fuller
12-26-71
62.00
All of the checks written on the Arlington National Bank escrow account were debited from petitioners' account in January 1972. On February 3, 1972, petitioners withdrew the remaining balance of $10.99 from the escrow account. While Mrs. Christie remained in the Euless, Texas, home until it could be rented in *530 March 1972, Mr. Christie obtained a temporary position with the Department of the Army at Fort Hood, Killeen, Texas, the last week of February 1972 and began working there. Petitioners purchased a home in Temple, Texas, and financed the purchase with a mortgage note of $22,050. A prepaid finance charge of $220.50 was incurred in connection with that loan. Petitioners paid the mortgagee, First Federal Savings and Loan Association of Temple, numerous mortgage payments beginning May 6, 1972. By year-end 1972 petitioners had paid interest in the amount of $431.69 on the First Federal Savings and Loan Association loan. While petitioners lived in Temple, Texas, they procured several other loans, including a $2,000 automobile loan from the Fort Hood Credit Union. That loan was made on April 10, 1972, at an interest rate of 12 percent annually. To repay the Credit Union loan, petitioners paid $94.15 monthly in May, June, and July. Mrs. Christie obtained from the Arlington National Bank, Arlington, Texas, a 90-day, $1,000 loan on March 21, 1972, with interest of 8 percent annually. The promissory note listed Mrs. Charistie's address as petitioners' Euless home. On June 7, 1972, Mrs. *531 Christie repaid that loan with a check in the sum of $1,020. Arlington National Bank reimbursed Mrs. Christie $2.44 on June 8, 1972, for overpayment. On approximately August 10, 19728 the Department of the Army appointed Mr. Christie to a career position in Germany. Petitioners sold their Temple, Texas, home and moved with their children and Mr. Christie's mother to Frankfurt, Germany. Upon arrival, petitioners were temporarily transferred for one week to Gessen, Germany. Thereafter Mr. Christie was reassigned to the Department of Defense school system in Bitburg, Germany, where petitioners remained until approximately October 1973. The move from Temple, Texas, to Germany was largely paid for by the United States Government. However, petitioners' temporary lodging expenses in Bitburg and Gessen were not fully reimbursed by the Government. On October 9, 1972, petitioners and their family moved into permanent quarters in Bitburg; however some of their household goods had been lost en route. During 1972 petitioners had two children living with them. One of these children was four years old and the other was ten years old. Because both Mr. and Mrs. Christie worked during *532 much of the year 1972, the children required child care. Mrs. Christie was a registered nurse. She worked as a nurse for approximately seven months (January through July) in 1972. From the latter part of February throughout the remainder of the year 1972 Mr. Christie was employed full time and prior thereto he was actively seeking employment. At times the petitioners' four-year-old child was kept in nursery school and at times petitioners employed a babysitter to stay with her. The ten-year-old child was in school during the winter months and during much of the time petitioners did not pay for care for him. However when Mrs. Christie worked the 3 p.m. to 11 p.m. shift, petitioners paid someone to look after the ten-year-old child after he got home from school. During the summer months petitioners paid for child care for both children. Petitioners at the trial produced receipts for the following payments for child care: Payee
Date
Amount
Euless Private School
1-26-72
$65.00
Euless Private School
3-16-72
80.00
Koonegay School
4-21-72
11.25
Koonegay School
4-27-72
11.25
Koonegay School
5-5-72
11.25
Koonegay School
5-12-72
11.25
Koonegay School
5-19-72
11.25
Koonegay School
6-2-72
15.75
*533 As of January 26, 1972, the charges at the Euless Private School for pre-kindergarten were $15 a month tuition and $15 a week for day care. The checks to the Koonegay School were marked for "nursery care." With regard to their son, petitioners' medical expenses included $5 payments to W. J. Bruce for services on each April 10, 1972, April 14, 1972, and July 5, 1972. Petitioners paid Westside Drug $12.75 on July 5, 1972. Mr. Christie carried Blue Cross/Blue Shield coverage for his family which cost him in excess of $300 in 1972. When petitioners' 1972 tax return was questioned while they were living in Germany in 1974, Mr. Christie mailed a number of papers including some receipts to the Internal Revenue Service in New York. Petitioners itemized and claimed on their 1972 joint income tax return the following deductions in dispute: Medical expenses
$ 444.91 (including $150
hospitalization)
Interest
180.00
Child care expenses
1,400.00
Rental property expenses
3,590.00
Moving expenses
2,397.40
Respondent disallowed petitioners' itemized deductions; instead respondent allowed petitioners a $2,000 standard deduction for tax year 1972. In their petition, *534 petitioners alleged that their deductions should be $558.91 for medical expenses, an additional $683 for interest, $6,609 for rental property loss, $5,969.40 for moving expenses, and $170 for a casualty loss. [4]
OPINION The first issue for decision is whether petitioners are entitled to a medical expense *535 deduction under section 213 in the amount of $558.91. Petitioners argue that they are entitled to deduct the following medical expenses: Expense
Amount
1/2 Blue Cross/Blue Shield
$150.00
Remainder Blue Cross/Blue Shield
96.00
Eyeglasses for entire family
212.00
Surgical expenses
100.91
Respondent concedes that petitioners have established a $27.75 medical expense. Mr. Christie testified that some of his receipts for medical expenses were contained in the records which were lost in the APO mail when he mailed certain records to the Internal Revenue Service in New York from Germany. Except for the $27.75 for which he had records, Mr. Christie could not recall the payment of the claimed medical expenses except for hospitalization. He was able independently to testify that he carried Blue Cross/Blue Shield insurance on his family for the full year 1972 at a cost of over $300. We accept this testimony and hold that petitioners are entitled to a deduction for hospital insurance of $150. However, petitioners because of loss of their records and lack of memory on the part of Mr. Christie have failed to establish other medical expenses in excess of 3 percent *536 of their adjusted gross income. The second issue is whether petitioners are entitled to an interest deduction under section 163 in excess of $710.84. Respondent concedes that the $710.84 is deductible if petitioners' allowable deductions cumulatively exceed the standard deduction. Although petitioners assert that records of a portion of their 1972 interest payments were lost in the APO mail, petitioners introduced evidence indicating that they paid interest of $708.40 in 1972 for loans from First Federal Savings and Loan Association of Temple, Fort Hood Credit Union, and Arlington National Bank.Additionally, the evidence indicates that petitioners paid the Fort Hood Credit Union interest of approximately $18 on July 10, 1972, which amount was not shown in petitioners' Credit Union periodic statement. Mr. Christie testified that two payments made to Fleet-Rall Mortgage Company in 1972 in the amounts of $151.33 and $157.72 were mortgage payments for the Euless residence. However, there is no evidence in this record to show what amount, if any, of these payments was for interest. We hold that petitioners are entitled to a $726.40 interest deduction for 1972. The next issue is *537 whether petitioners are entitled to a deduction for child care expenses under section 214 in the amount of $1,400. Petitioners introduced documents indicating the payment of $217 for child care expenses in 1972. While these documents appear to be incomplete, the indication is that child care for petitioners' four-year-old at the Euless Private School ran about $80 a month or a little less than $20 a week. At the Koonegay School a payment of $11.25 was made for a number of weeks, but the record does not show how many days were covered for this payment. From the timing of these payments, it appears that the Euless Private School was in Euless and the Koonegay School was in Temple. Also, it is clear that these payments covered care for only the four-year-old. Mr. Christie testified that petitioners incurred child care expenses in at least 30 weeks during 1972 when his wife was either working or searching for a job. He estimated that during the summer weeks when both children required child care, petitioners paid approximately $65 per week for child care, and during the time the ten-year-old was in school most of the day child care costs were approximately $35 per week. From the *538 information in the record it appears that child care costs for the four-year-old, except for care provided on any day she could not be taken for nursery care, ranged from $11.25 to $20 a week. Certainly it is not reasonable to assume that after-school care when needed for the ten-year-old was equal to the day care for the four-year-old. Considering all the evidence of record, including the documentary evidence and Mr. Christie's testimony, we conclude that petitioners expended for child care $110 per month for the months of January through May 1972 and $150 a month for the months of June and July 1972, or a total of $850, and are entitled to deduct this amount as child care expenses. The next issue is whether petitioners are entitled to a loss deduction from rental property, and, if so, the amount thereof. Mr. Christie testified that after the lessees abandoned his rental property in August 1971, the Euless, Texas, house was vandalized. From a $1,500 repairs and maintenance escrow account established by petitioners at the Arlington National Bank, Arlington, Texas, $1,489.01 was expended to paint and to replace carpets, a sliding glass door, tile, and walls. All checks written *539 on the escrow account were written by petitioners in December 1971, but the escrow account was debited each time in January 1972. Petitioners argue that because the payees cashed the checks in January 1972, petitioners are entitled to a tax deduction for repairs to the rental property in 1972. Aside from the fact that many, if not all, of the expenditures were incurred for capital improvements, the payments are not deductible by petitioners in 1972 because deductibility is determined by the date of delivery of the check to the payee rather than the date the check is presented to the drawee bank for payment. Estate of Spiegel v. Commissioner, 12 T.C. 524 (1949). Mr. Christie testified that he expended approximately $500 in 1972 to lay new water and sewer lines to meet the Texas building code specifications. The record does not include any documentary evidence as to this expenditure. However, if the amount of the expenditure was accurately shown, it would not be deductible as a repair expense since the water and sewer lines are capital improvements. In their 1972 tax return petitioners showed the $3,590 rental property expenses as including $1,800 of depreciation, *540 $1,705 of mortgage payments, and $55 of management fees. [5] In their petition, petitioners claim the rental property loss as follows: Sales price: $22,000
Expenses: Selling costs
$2,420
(Loan origination fee of
5% of sales price plus
real estate commission of
6% of sales price)
Payments
1,716
Repairs
1,875
Insurance & maintenance
216
Legal and closing fees
696
Mileage for checking property
86
$7,209 *
Income: Rent collected
600
Loss
$6,609
Respondent asserts that the Euless property neither constituted a trade *541 or business within the meaning of section 162 nor property held for the production of income within the meaning of section 212. Therefore, respondent contends that the property does not qualify petitioners to claim rental expense deductions. From an examination of the facts before us, we conclude that petitioners did hold the property from March until November 1972 either as property used in a trade or business or property for the production of income within the meaning of section 212. There is no one test that can be applied to determine whether property is held for the production of income, but rather, the determination must be based upon numerous factors. See Newcombe v. Commissioner, 54 T.C. 1298 (1970). Petitioners occupied the Euless, Texas, house prior to August 1968, and, according to Mr. Christie's testimony, between mid-January and the end of February 1972 Mrs. Christie occupied the house to protect it from vandalism and to make certain repairs. Respondent would have us believe that although petitioners rented the home to third parties between August 1968 and *542 August 1971, Mrs. Christie's occupancy in 1972 converted the home from rental property into property not held for the production of income. The record shows that petitioners returned from Guam to their Euless home not only to undertake certain repairs and improvements, but also to provide the family with an interim principal residence. This latter intention and usage temporarily converted the house into a personal residence. However, when the family moved to Temple, Texas, and the Euless house was rented to a third party during March, April and May 1972, from which petitioners collected $600 in rent, the property was converted back into business property or property held for the production of income. Between June and Noevember, although vacant, the house remained available for rental. Therefore, in our opinion the Euless residence was business property or property held for the production of income from March until November 1972. However, we are of the opinion that petitioners are not entitled to a deduction associated with expenses of property held for the production of income in the amount claimed. Petitioners claim $2,420 of selling costs when they sold the Euless house attributable *543 to a loan origination fee and real estate commission, and $696 of legal and closing fees. These costs are not expenses of rental of the house, but rather expenses connected with its sale. Therefore, these expenses are of the nature either to be subtracted from the selling price of the house or added to its basis in determining the gain or loss, if any, on the sale of the house. [6] We have no issue here of gain or loss or the sale of the house. Whether a taxpayer itemizes personal deductions or uses the standard deduction, if he incurs expenses proximately related to income-producing property or in a rental business, he is entitled under sections 162 and 212 to deduct those ordinary *544 and necessary expenses, including management fees, repair costs, insurance premiums, interest payments, and depreciation. While petitioners have claimed entitlement to a deduction for $1,800 of depreciation in 1972, $55 of management fees, $216 of insurance and maintenance, $1,716 of "payments" and $86 for mileage for checking the property, petitioners have failed to enter into the record documents to support their claimed deductions. Mr. Christie estimated that he originally purchased the Euless property for $16,000 and that he spent approximately $5,000 on improvements, but he was unable to confirm the exact amounts. He also did not attempt to allocate any portion of the $16,000 to the land on which the house was constructed. Petitioners did introduce checks showing mortgage payments to Fleet-Rall Mortgage Company on March 7, 1972, and July 21, 1972, for $151.33 and $157.72, respectively. A tally from petitioners' check-book revealed payments to Fleet-Rall on September 26, October 15, and November 8, but the year of payment was not indicated. None of the documents indicates the amounts attributable to interest payments as opposed to principle payments. Mr. Christie testified *545 that the $55 was paid as a management fee for the property. Although the record here is sketchy, it is clear that petitioners did not have any gain from rental of the Euless house in 1972. However, since respondent disallowed $3,590 of expenses, he is effect determined that the entire $600 petitioners received in rent was net income. This is clearly unreasonable. Certainly petitioners are entitled to some depreciation deduction, even though not $1,800, and to some expenses for management fees, insurance and interest payments. Since we are convinced petitioners had no gain on the rental of the Euless house in 1972, we hold on the basis of the record as a whole that petitioners are entitled to deduct for depreciation, interest, insurance, management fees and all other rental expenses in 1972 the amount of $600. The next issue is whether petitioners are entitled to a moving expense deduction under section 217 in the amount of $5,969.40, and whether under section 165 petitioners are entitled to a casualty loss deduction resulting from loss of and damage to household goods. While petitioners concede that their move from Agana, Guam, to Euless, Texas, was largely paid for by the *546 United States Government, petitioners assert that $517.40 remain unreimbursed for certain portions of the trip, including their stopover in Hawaii, expenses incurred in San Francisco while awaiting repair of their car, and airplane fare expended to fly their children from San Francisco to Euless. However, petitioners did not submit documents in support of the amounts claimed as unreimbursed. As respondent submits, the record presents the possibility that petitioners incurred these expenses prior to the tax year in issue since on or prior to December 27, 1971, petitioners had opened a new bank account at the Arlington National Bank in Arlington, Texas, on which they wrote numerous checks during the last week of 1971. It is likely that petitioners applied in person for the bank account. Petitioners have failed to show that the $517.40, if paid, was for moving costs rather than for personal reasons or that it was paid in 1972. We therefore hold that this amount is not deductible. The record reflects that Mr. Christie moved to Temple, Texas, to take a temporary job in February 1972. He began working in a temporary position with the Department of the Army during the last week of *547 February. Mrs. Christie and the children soon joined Mr. Christie.Petitioners lived in Temple, Texas, until Mr. Christie obtained a new career assignment in Germany on approximately August 10, 1972. At that time, petitioners moved with their children and Mr. Christie's mother to Germany. Petitioners argue that because the Government did not reimburse them for the move from Euless to Temple, they are entitled to a moving expense deduction under section 217. Petitioners submit that they incurred moving expenses of $175 paid to Jeff Williams on March 25, 1972, and $100 in cash payments. Respondent contends that petitioners are not entitled to deduct any moving expenses from Euless to Temple because section 217(c)(2)(A) imposes the condition that "during the 12-month period immediately following his arrival in the general location of his new principal place of work, the taxpayer is a full-time employee, in such general location, during at least 39 weeks * * *." Mr. Christie moved to Germany before completing 39 weeks of full-time work in Temple, Texas; his six months certainly does not constitute *548 a mere stopover. See Nico, Jr. v. Commissioner, 67 T.C. 647, 655 (1977), affd. on this issue 565 F.2d 1234 (2d Cir. 1977). Therefore, petitioners are not entitled to moving expense deductions with regard to their move from Euless to Temple. Petitioners further claim $3,800 of unreimbursed meals and lodging expenses incurred in their move from Temple, Texas, to Bitburg and Gessen, Germany. Petitioners have not provided receipts or a reconstruction of their expenditures. Mr. Christie's testimony indicates that some of the expenses were for his mother, who was not his dependent. On this record petitioners have totally failed to show any amount of deductible moving expenses in connection with their move from Temple, Texas, to Germany in 1972. Petitioners assert that they are entitled to a casualty loss deduction for lost and damaged household goods resulting from their move to Germany. However, petitioners have failed to prove the absence of reimbursement by the Government for any damage and loss, and furthermore, they have failed to prove what damage, if any, actually occurred to their property. Accordingly, petitioners are not entitled to a *549 casualty loss deduction. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect in the years in issue. ↩
2. Petitioners on their return claimed an interest deduction of $180. Respondent disallowed in his notice of deficiency the rental expense, moving expense, medical expense, and child care expense deductions claimed by petitioners for lack of substantiation. The balance of the itemized deductions of $833 (in which the interest deduction of $180 was included) was disallowed solely because the standard deduction exceeded the amount of $833. In his answer respondent alleged that the deficiency as determined in the notice-- is based upon the following adjustments: * * *
5. Disallowance of Balance of Itemized Deductions - $833.00. Petitioners claimed other itemized deductions in the amount of $833.00. As the standard deduction is more beneficial to the petitioners, the balance of the itemized deductions is disallowed. From the deficiency notice and respondent's answer, as well as statements at the trial, we conclude that respondent did not question the substantiation of the $833 deductions claimed by petitioners composed of state and local gasoline taxes of $70, general sales tax of $80, charitable contributions of $160, interest expenses of $180, and miscellaneous deductions of $343, but merely questioned whether petitioners had substantiated other deductions in a sufficient amount to exceed the standard deduction when added to the $833. In their petition, petitioners claimed an additional deduction for interest of $683. On brief respondent conceded that petitioners had substantiated a deduction for interest paid of $710.84 and were entitled to that amount of deduction for interest paid. On brief, however, respondent argues that petitioners have not substantiated in full the deductions claimed on their return for taxes, charitable contributions, and miscellaneous. In our view, merely because petitioners claimed an increased deduction for interest paid, and proved their claim, does not put in issue the substantiation of other deductions not questioned in the notice of deficiency, the answer, and in a clear manner, if at all, at the trial. We therefore accept the deductions for taxes, charitable contributions, and miscellaneous expenses as shown on the return since petitioners claimed no increased amount for these items. ↩
3. In the notice of deficiency respondent disallowed all of petitioners' claimed rental expense deduction of $3,590 in effect determining a $600 profit for petitioners from rental of a house since petitioners had reported $600 rental income from which they subtracted $3,590 to show a loss from rental property of $2,990.↩
4. Respondent on brief argues that petitioners have not substantiated their deductions for charitable contributions of $160 and $263 of their claimed deductions for miscellaneous expenses. We have not considered these arguments, however, since, as pointed out in footnote 2, respondent did not question substantiation of these items until brief. We therefore conclude that petitioners are entitled to deduct $150 for taxes, $160 for charitable contributions and $343 for miscellaneous expenses as amounts claimed on their return which were not disallowed in the notice of deficiency except for the reason that the standard deduction exceeded the total of these amounts. Respondent did not amend his answer to question these amounts nor were issues as to these amounts tried by express or implied consent. See Rule 41(b), Rules of Practice and Procedure, United States Tax Court.↩
5. Petitioners have not claimed in their tax return or petition any loss resulting from the sale of the house in Euless, Texas, in November 1972. Since their return for 1972 shows depreciation previously claimed of $4,000 and Mr. Christie testified that petitioners paid about $16,000 for the house and made about $5,000 of improvements (apparently other than the 1971-1972 improvements), it may be that the house was sold at no gain or loss even though Mr. Christie testified that it was sold at a loss. In any event, no issue in this regard is before us.↩
*. These expenses total $7,009. The $200 discrepancy was not explained.↩
6. Moreover, these costs are not deductible as moving expenses under section 217 since the expenditures must be incurred with respect to a taxpayer's principal residence before his departure for his new principal place of work. Section 1.217-2(b)(8), Income Tax Regs.↩ As found above, the Euless house was not petitioners' principal residence prior to their move from Texas to Germany.