KURT W. REISWIG AND LYNNE REISWIG, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Reiswig v. Commissioner
Docket No. 3585-82.
United States Tax Court
T.C. Memo 1985-434; 1985 Tax Ct. Memo LEXIS 201; 50 T.C.M. (CCH) 843; T.C.M. (RIA) 85434; August 19, 1985. *201 After working overseas 10 years, petitioners moved from Athens, Greece, to Sacramento, California, in April 1977. Petitioner-husband's efforts to acquire a business fell through in September 1977. In November 1977, petitioners moved from Sacramento to Garden Grove, California, and petitioner-husband began to work for a corporation in Garden Grove. Held: Petitioners have failed to satisfy the 39-week employment requirement of section 217(c)(2), I.R.C. 1954, and so are not permitted to deduct the expenses of moving from Athens to Sacramento. *202 Kurt W. Reiswig, pro se. Edward I. Kaplan, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined a deficiency in Federal individual income tax against petitioners for 1977 in the amount of $5,408. After concessions by petitioners, the issue for decision is whether *203 petitioners are entitled to deduct moving expenses under section 217. [1]
FINDINGS OF FACT Some of the facts have been stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference. When the petition was filed in the instant case, Kurt W. Reiswig (hereinafter sometimes referred to as "Reiswig") and Lynne Reiswig, husband and wife, resided in Byron, California. After working overseas for about 10 years, Reiswig returned to the United States from Athens, Greece. He travelled via the Netherlands, and arrived in Chicago, Illinois, on March 30, 1977. He spent April 1 through 17 on "typical corporate debriefing" in Milwaukee, Wisconsin. On April 17, 1977, Reiswig arrived in Sacramento, California, where he rejoined the family members who had flown there previously. This move from Athens to Sacramento cost $22,219, which petitioners deducted on their 1977 tax return as moving expenses. On April 19, 1977, Reiswig and his brother-in-law initiated the purchase of a business known as Insultherm Insulation *204 of Contra Costa County (hereinafter sometimes referred to as "Insultherm"). Reiswig spent the months of April through August 1977, investigating this business, obtaining the appropriate permits and licenses to operate this business, and forming a corporation (KRRM Enterprises, Inc.) to control this business. During this time, petitioners tried to buy a residence in the vicinity of this business, however, no home was bought. In August 1977, Reiswig became aware of misrepresentations made by the sellers of Insultherm, relative to the records of this business. On September 7, 1977, the sellers were notified that all purchase negotiations on behalf of petitioners were being terminated as a result of these misrepresentations. On September 8, 1977, Reiswig turned his efforts toward securing employment. On October 23, 1977, Reiswig received a job offer from Northrop Corporation for employment in Garden Grove, California, which he accepted. Petitioners, who had been staying with relatives in the Sacramento area since their return from Greece, then moved from Sacramento to Garden Grove during November 1977. [2] Following petitioners' move to Garden Grove, Reiswig's employment with Northrop *205 Corporation began November 23, 1977, and continued, uninterrupted, until October 15, 1979. During the 12-month period from April 11, 1977, to April 10, 1978, Reiswig was employed for 22 weeks. During the 12-month period from November 23, 1977, to November 22, 1978, Reiswig was employed for 52 weeks. * * * When petitioners arrived in the Sacramento area, in April 1977, they intended to remain there; Sacramento was not a mere stopover. OPINION Respondent contends that petitioners moved from Athens, Greece, to Sacramento, California, that this move ended in April 1977, and that petitioners failed to work at least 39 weeks in the 12 months after the end of the move. On brief, petitioners maintain that Reiswig's decision to not purchase Insultherm as "a 'self-preservation decision' and should be a condition where the taxpayer is unable to satisfy the condition set forth in Section 217(C)(2)(A), in an involuntary but prudent action." (Emphasis in original.) We agree with respondent. Under section 217[3], a taxpayer may deduct that expenses of moving to a new *206 principal place of work (sec. 217(a)). However, the deduction is conditioned on the taxpayer's full-time employment in the new area at least 39 weeks out of the 12-month period immediately after the move (sec. 217(c)(2)), unless the taxpayer is unable to satisfy the 39-week requirement for one of the permissible reasons specified in the statute (sec. 217(d)(1)). In order to be entitled to a deduction under section 217, the taxpayer has the burden of showing that he or she comes within the provisions of the section. E.g., Merlino v. Commissioner,660 F.2d 415, 416 (CA9 1981), affg. per curiam a Memorandum Opinion of this Court. [4]
*207 Petitioners moved from Athens to Sacramento. Sacramento was the end-point of their move, unlike Milwaukee, Wisconsin, which was a debriefing stopover. When petitioners arrived in Sacramento, Reiswig sought permanent employment (or self-employment) in the Sacramento area. It was only after the final collapse of his efforts to acquire Insultherm, on September 7, 1977, that Reiswig turned his employment-seeking efforts elsewhere. We conclude that the move that began in Athens ended on April 17, 1977, when Reiswig arrived in Sacramento, and that the measuring periods for subparagraphs (A) and (B) of section 217(c)(2) begin on that date. The move to Garden Grove, in November 1977, is a separate move and is not part of the move that began in Athens. See Merlino v. Commissioner,supra;Chamberlin v. Commissioner,78 T.C. 1136 (1982); Muse v. Commissioner,76 T.C. 574 (1981); Nico v. Commissioner,67 T.C. 647 (1977), affd. on this point, 565 F.2d 1234 (CA2 1977). The parties have stipulated (and we have found) that Reiswig was employed for only 22 weeks during the 12 months after the end of the move *208 to Sacramento. Evidently, petitioners have fallen far short of the 39-week employment requirement of section 217(c)(2). We conclude that petitioners are not entitled to deduct the expenses of their move from Athens to Sacramento. Petitioners argue that-- It can be implied from the foregoing IRC Code sections [subsections (c)(2)(A) and (d)(1) of section 217] that in order for the petitioner to have fulfilled the 39 week rule under Section 217(c)(2)(A), the Petitioner would have suffered a loss of his investment in the business that the Petitioner was planning to acquire as well as the loss of compensation for the value of his time trying to correct a business purchased based on gross misrepresentation and fraud perpetrated by the sellers. The difficulty with petitioners' argument is that (1) the Congress has set the ground rules for the deduction, including the 39-week employment requirement, (2) the Congress has set the limits on the section 217(d) relief provision (see Muse v. Commissioner,76 T.C. at 577-578), and (3) petitioners fall outside the relief provision. In particular, petitioners' failure to satisfy the 39-week employment requirement was not *209 because of death or disability (sec. 217(d)(1)(A)) or because of involuntary separation from the service of an employer, or transfer for the benefit of an employer "after obtaining full-time employment" (sec. 217(c)(1)(B)). (Note that, on the facts of the instant case, sec. 217(c)(2) requires that the 39 weeks of full-time employment be in the general area of Sacramento. Muse v. Commissioner,76 T.C. at 579-580.) Petitioners have failed to bring themselves within the boundaries marked out by the Congress and so are not entitled to the claimed deduction. New Colonial Ice Co. v. Helvering,292 U.S. 435, 440 (1934). Finally, we note that September 7, 1977, was more than 20 weeks after April 17, 1977. Accordingly, even if Reiswig had bought Insultherm on September 7, 1977 (instead of notifying the seller on that date that negotiations were terminated), it was already too late to comply with the 39-week employment rule. In order to satisfy the 39-week employment rule, Reiswig would have had to start his new employment no later than mid-July 1977. In other words, as far as we can tell from the record in the instant case, it was Reiswig's time schedule, *210 not the seller's asserted misrepresentations, that caused petitioners to lose the moving expense deduction. We hold for respondent. Decision will be entered for respondent.
Footnotes
1. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the year in issue.↩
2. Petitioners' moving expenses from Sacramento to Garden Grove are not in dispute in the instant case.↩
3. Section 217 provides, in relevant part, as follows: SEC. 217. MOVING EXPENSES. (a) Deduction Allowed.--There shall be allowed as a deduction moving expenses paid or incurred during the taxable year in connection with the commencement of work by the taxpayer as an employee or as a self-employed individual at a new principal place of work. * * * (c) Conditions for Allowance.--No deduction shall be allowed under this section unless-- (1) the taxpayer's new principal place of work-- (A) is at least 35 miles farther from his former residence than was his former principal place of work, or (B) if he had no former principal place of work, is at least 35 miles from his former residence, and (2) either-- (A) during the 12-month period immediately following his arrival in the general location of his new principal place of work, the taxpayer is a full-time employee, in such general location, during at least 39 weeks, or (B) during the 24-month period immediately following his arrival in the general location of his new principal place of work, the taxpayer is a full-time employee or performs services as a self-employed individual on a full-time basis, in such general location, during at least 78 weeks, of which not less than 39 weeks are during the 12-month period referred to in subparagraph (A). For purposes of paragraph (1), the distance between two points shall be the shortest of the more commonly traveled routes between such two points. (d) Rules for Application of Subsection (c)(2).-- (1) The condition of subsection (c)(2) shall not apply if the taxpayer is unable to satisfy such condition by reason of-- (A) death or disability, or (B) involuntary separation (other than for willful misconduct) from the service of, or transfer for the benefit of, an employer after obtaining full-time employment in which the taxpayer could reasonably have been expected to satisfy such condition.↩
4. T.C. Memo. 1980-112↩.